UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TAYLOR, Mayor, City of Roseville;
DOUGLAS R. ALEXANDER, City Manager, City of Algonac;
MATTHEW BIERLEIN, County Commissioner, Tuscola County;
DONALD LYONS, Mayor, City of Dowagiac;
TODD R. ROBINSON, Superintendent, New Haven Community Schools;
RUSSELL PICKELL, Superintendent, Riverview Community Schools;
GARY O'BRIEN, School Board President, Riverview Community Schools;
KELLY COFFIN, Superintendent, Tecumseh Public Schools;
KIMBERLY AMSTUTZ-WILD, School Board President, Tecumseh Public
Schools; KEITH WUNDERLICH, Superintendent, Waterford School District;
ROBERT SEETERLIN, School Board President, Waterford School District;
MICHELLE IMBRUNONE, Superintendent, Goodrich Area Schools;
DAVID P. PRAY, Superintendent, Clinton Community Schools;
PATRICIA MURPHY-ALDERMAN, Superintendent, Byron Area Schools;
AMY LAWRENCE, School Board President, Byron Area Schools;
ROBERT D. LIVERNOIS, Superintendent, Warren Consolidated School District;
YVONNE CAAMAL CANUL, Superintendent, Lansing School District,
*in their individual and official capacities*; and
STEPHEN PURCHASE, *in his individual capacity*,

     Plaintiffs,

                              Hon.  John Corbett O'Meara

v.

                              Case No. 2:16-cv-10256

RUTH JOHNSON, in her official
capacity as Secretary of the State of Michigan;
MICHIGAN DEPARTMENT OF STATE; and
STATE OF MICHIGAN,

     Defendants.
_____

(attorneys listed on following page)

Miller, Canfield, Paddock and Stone, P.L.C.
Scott R. Eldridge (P66452)
Michael J. Hodge (P25146)
*Attorneys for Plaintiffs*
One Michigan Avenue
Lansing MI 48933
eldridge@millercanfield.com
hodge@millercanfield.com

Miller, Canfield, Paddock and Stone, P.L.C.
Jerome R. Watson (P27082)
Brian M. Schwartz (P69018)
*Attorneys for Plaintiffs*
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
schwartzb@millercanfield.com
watson@millercanfield.com
_____

### Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order and a Preliminary Injunction

Plaintiffs, through their attorneys, Miller, Canfield, Paddock and Stone, P.L.C, request pursuant to Federal Rule of Civil Procedure 65 that the Court enter an *ex parte* temporary restraining order and a preliminary injunction for the following reasons:

1.      On November 4, 2015, the Michigan Senate passed SB 571.

2.      On December 16, 2015, shortly before the close of the legislative session, Representative Lisa Lyons introduced a substitute bill for SB 571.  The Senate and the House passed the substitute bill with very little debate. The substitute bill included a new provision, §57(3).

3.      On January 6, 2016, Governor Rick Snyder signed SB 571 as Act 269 with immediate effect.

4.      Subsection 57(3) of Act 269 restricts Plaintiffs' First Amendment rights by imposing a gag order on "a person acting for a public body" by prohibiting the dissemination of objectively neutral, factual information about local ballot questions during the 60 days prior to an election.  Subsection 57(3) also restricts the First Amendment rights of the electorate who are unable to receive this information about local ballot questions.  Subsection 57(3) also violates Plaintiffs' due process rights because its overly vague language does not provide adequate notice or guidance about what is criminal conduct versus legal conduct when "referenc[ing] a local ballot question" using "public funds or resources."

5.      Plaintiffs (excluding Stephen Purchase) are "person[s] acting for a public body" who are prevented from exercising their First Amendment rights to discuss local ballot proposals prior to the March 8, 2016 and May 3, 2016 elections.

6.      Plaintiffs are also citizens deprived of their right to hear core political speech.

7.      Based on the specific facts shown in the Verified Complaint and Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order and a Preliminary Injunction and supporting Brief, including all exhibits, immediate and irreparable

injury, loss or damage will result to the Plaintiffs from the delay required to effect notice on the Defendants, particularly since Plaintiffs are already in the 60 day gag window preceding the March 8 elections.  Fed. R. Civ. P. 65(b).

8.     Plaintiffs' counsel certifies that on January 25, 2016, he contacted the Michigan Attorney General's office and informed it that Plaintiffs would be filing a Verified Complaint and *Ex Parte* Motion for a Temporary Restraining Order and a Preliminary Injunction in the Eastern District of Michigan on January 26, 2016 and would immediately appear before the assigned Judge or alternate to request the entry of a Temporary Restraining Order.

9.     On January 26, 2016, prior to filing this motion, Plaintiffs' counsel emailed a courtesy copy of the Verified Complaint to Denise Barton in the Michigan Attorney General's office.

10.     Additionally, on January 26, 2016, prior to filing this motion, Plaintiffs' counsel contacted the Michigan Attorney General's office and requested concurrence in the filing of the this motion.  After this motion is filed, Plaintiffs' counsel will immediately email a courtesy copy of the motion to Denise Barton in the Michigan Attorney General's office.

WHEREFORE, for the reasons set forth above and in the attached brief, Plaintiffs request the entry of a Temporary Restraining Order enjoining Defendants from enforcing §57(3) of Act 269 or acting pursuant to §57(3) to restrict Plaintiffs

from disseminating objectively neutral factual information about ballot questions and an Order to Show Cause Why a Preliminary Injunction Should Not Issue. Alternatively, Defendants request that the Court schedule a hearing at the earliest possible time and, after a hearing, issue a preliminary injunction.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Michael J. Hodge (P25146)
*Attorneys for Plaintiffs*
One Michigan Avenue
Lansing MI 48933
eldridge@millercanfield.com
hodge@millercanfield.com

Jerome R. Watson (P27082)
Brian M. Schwartz (P69018)
*Attorneys for Plaintiffs*
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
schwartzb@millercanfield.com
watson@millercanfield.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TAYLOR, Mayor, City of Roseville;
DOUGLAS R. ALEXANDER, City Manager, City of Algonac;
MATTHEW BIERLEIN, County Commissioner, Tuscola County;
DONALD LYONS, Mayor, City of Dowagiac;
TODD R. ROBINSON, Superintendent, New Haven Community Schools;
RUSSELL PICKELL, Superintendent, Riverview Community Schools;
GARY O'BRIEN, School Board President, Riverview Community Schools;
KELLY COFFIN, Superintendent, Tecumseh Public Schools;
KIMBERLY AMSTUTZ-WILD, School Board President, Tecumseh Public Schools;
KEITH WUNDERLICH, Superintendent, Waterford School District;
ROBERT SEETERLIN, School Board President, Waterford School District;
MICHELLE IMBRUNONE, Superintendent, Goodrich Area Schools;
DAVID P. PRAY, Superintendent, Clinton Community Schools;
PATRICIA MURPHY-ALDERMAN, Superintendent, Byron Area Schools;
AMY LAWRENCE, School Board President, Byron Area Schools;
ROBERT D. LIVERNOIS, Superintendent, Warren Consolidated School District;
YVONNE CAAMAL CANUL, Superintendent, Lansing School District,
*in their individual and official capacities*; and
STEPHEN PURCHASE, *in his individual capacity*,

          Plaintiffs,

                                        Hon.  John Corbett O'Meara
v.
                                        Case No. 2:16-cv-10256
RUTH JOHNSON, in her official
capacity as Secretary of the State of Michigan;
MICHIGAN DEPARTMENT OF STATE; and
STATE OF MICHIGAN,
                                        CLAIM OF
          Defendants.                   UNCONSTITUTIONALITY
_____

(attorneys listed on following page)

Miller, Canfield, Paddock and Stone, P.L.C.
Scott R. Eldridge (P66452)
Michael J. Hodge (P25146)
*Attorneys for Plaintiffs*
One Michigan Avenue
Lansing MI 48933
eldridge@millercanfield.com
hodge@millercanfield.com

Miller, Canfield, Paddock and Stone, P.L.C.
Jerome R. Watson (P27082)
Brian M. Schwartz (P69018)
*Attorneys for Plaintiffs*
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
schwartzb@millercanfield.com
watson@millercanfield.com

## Brief in Support of Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order and a Preliminary Injunction

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF ISSUES PRESENTED.............................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................... vii

I.    INTRODUCTION ..........................................................................1

II.   FACTUAL AND LEGISLATIVE BACKGROUND.................................3

    A.    Michigan's Distinction Between Express Advocacy and its
        Restrictions on Use of Public Funds to Engage in Express
        Advocacy Prior to Passage of Senate Bill 571...................................3

    B.    The Surreptitious Passage of Senate Bill 571 ....................................4

    C.    Objectively Neutral Information About Local Ballot Proposals
        Cannot Be Disseminated Because of §57(3) of Act 269 ....................6

III.  ARGUMENTS ...............................................................................7

    A.    Standards Governing Requests for Injunctive Relief..........................7

    B.    Governing First Amendment Principles.............................................7

    C.    Likelihood of Success on the Merits.................................................9

        1.    The Plaintiffs Are Likely to Succeed on their First
            Amendment Claim .................................................................9

            a.   Subsection 57(3) Will Not Survive a Facial Attack ..........10

            b.   Subsection 57(3) Will Not Survive an "As-Applied"
            Attack .................................................................18

        2.    Substantive Due Process .......................................................19

    D.    The Remaining Preliminary Injunction Factors Favor the
        Issuance of an Injunction..............................................................22

        1.    Plaintiffs Will Suffer Irreparable Injury Absent
            Injunctive Relief...................................................................22

        2.    An Injunction Will Not Cause Substantial Harm to
            Others .................................................................................22

**TABLE OF CONTENTS**
(continued)

3.    Public Interest Favors an Injunction to Protect First
Amendment Rights ..................................................................23

IV.    CONCLUSION.............................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Civ. Liberties Union Fund of Michigan v. Livingston County*,
    23 F. Supp. 3d 834, 843 (E.D. Mich. 2014) .......................................................22

*Am. Civ. Liberties Union Fund of Michigan v. Livingston County*,
    796 F.3d 636 (6th Cir. 2015) ................................................................7

*Assn. of Cleveland Fire Fighters v. City of Cleveland*, Ohio,
    502 F.3d 545 (6th Cir. 2007) ................................................................20

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
    457 U.S. 853 (1982).............................................................................8

*Bond v. Floyd*, 385 U.S. 116 (1966) ................................................................9

*Citizens United v. Fed. Election Commn.*, 558 U.S. 310 (2010).....................*passim*

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson
    Cnty*., 274 F.3d 377 (6th Cir. 2001)......................................................22

*In re Delorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985).......................................7

*Doe v. Snyder*, 101 F. Supp. 3d 672, 681 (E.D. Mich. 2015)................................20

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................22

*F.C.C. v. Fox TV Stations*, 132 S. Ct. 2307 (2012) ................................................20

*Fed. Election Commn. v. Wisconsin Right To Life*,
    551 U.S. 449 (2007).....................................................................12, 18

*First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)...................................17

*G & V Lounge, Inc. v. Michigan Liquor Control Commn.*,
    23 F.3d 1071 (6th Cir. 1994) ................................................................23

*Lakeshore Terminal & Pipeline Co. v. Defense Fuel Supply Center*,
    777 F.2d 1171 (6th Cir. 1985) ................................................................7

iii

*Love v. Johnson*, _ F. Supp. 3d _, 2015 WL 7180471
    (E.D. Mich. Nov. 16, 2015) ...................................................................19

*McCutcheon v. Fed. Election Commn.*, 134 S. Ct. 1434 (2014) ............................13

*Michigan Chamber of Com. v. Land*,
    725 F. Supp. 2d 665 (W.D. Mich. 2010) ................................................9

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) ...........................................15

*New York Times Co. v. U.S.,* 403 U.S. 713 (1971) ...................................................15

*Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989) ...................................................22

*Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012) ........................................22

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)...................................................19

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015) .................................8

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013) ...................................................10

*U.S. v. Virginia*, 518 U.S. 515 (1996)...................................................................11

*Virginia v. Hicks*, 539 U.S. 113 (2003) ................................................................10

*Wood v. Georgia*, 370 U.S. 375 (1962) ......................................................8, 14, 17

**Constitutional Provisions**

First Amendment...............................................................................*passim*

Fourteenth Amendment ...............................................................................7, 19

**State Statutes**

MCL 169.206(2)(b) and (2)(j) ..................................................................3

MCL 169.247(5)(a)...................................................................................14

MCL 169.257(1) .......................................................................................3

MCL 169.257(1)(b)...................................................................................3

2015 Mich. Pub. Acts 269, § 9(5)............................................................17

iv

2015 Mich. Pub. Acts 269, § 57(3) .................................................................*passim*

**Rules**

Fed. R. Civ. P. 65 .....................................................................................................7

**Attorney General Opinions**

Mich. Att'y Gen. Op. No. 4647 (1969) (Ex 10) ..............................................*passim*

## Statement of Issues Presented

I.      Should the Court issue a temporary restraining order and/or a preliminary injunction because there is a strong likelihood that §57(3) of Act 269 cannot survive a "facial challenge" under the First Amendment and the other relevant factors favor granting injunctive relief?

II.     Should the Court issue a temporary restraining order and/or a preliminary injunction because there is a strong likelihood that §57(3) of Act 269 cannot survive an "as-applied challenge" under the First Amendment and the other relevant factors favor granting injunctive relief?

III.    Should the Court issue a temporary restraining order and/or a preliminary injunction because there is a strong likelihood that §57(3) of Act 269 violates Plaintiff's substantive due process rights both facially and as-applied and the other relevant factors favor granting injunctive relief?

## Controlling or Most Appropriate Authority

U.S. Const. amend. I

U.S. Const. amend. XIV

*Bond v. Floyd*, 385 U.S. 116 (1966)

*Citizens United v. Fed. Election Commn.*, 558 U.S. 310 (2010)

*Fed. Election Commn. v. Wisconsin Right To Life*, 551 U.S. 449 (2007)

*Wood v. Georgia*, 370 U.S. 375 (1962)

Mich. Att'y Gen. Op. No. 4647 (1969)

## I.     Introduction

This matter requires immediate injunctive relief preventing the enforcement of a recently enacted statutory provision that gags core political speech protected by the First Amendment. On December 16, 2015, the Michigan House of Representatives was considering a campaign finance reform bill, SB 571, which had already passed the Michigan Senate.  In the waning hours of the legislative session, Representative Lisa Lyons introduced a substitute bill to replace the version that had already passed. The substitute bill contained several provisions not included in the original bill.  Most critically, new §57(3) is an unprecedented gag order that prevents public officials and employees from disseminating objectively neutral and factual information about local ballot proposals.  Among other things, it bars mere "references" to local ballot questions.  In a rushed manner, without any substantive debate (and apparently without some legislators knowing the actual contents of the substitute bill), the Legislature enacted SB 571 and the Governor signed it into law as Act 269.

Subsection 57(3) is unconstitutional. It restricts core First Amendment speech.  Not only are the First Amendment rights of public officials and employees now infringed, but so are the rights of citizens, who depend on elected and appointed public officials to inform them about matters of public concern and so they can participate in the political process.  Myriad of reasons exist why the Court

should enjoin this provision, which serves no compelling government interest. First, §57(3) cannot survive a First Amendment facial challenge because, among other reasons, it is overbroad since it prohibits communications of objectively neutral information that is neither express advocacy nor its functional equivalent. Second, it improperly distinguishes between who can speak in the 60 days prior to an election involving a local ballot proposal and who will be subjected to criminal penalties for speaking.  Third, it acts as a prior restraint.  Subsection 57(3) also cannot survive a First Amendment "as applied" challenge because it restricts the type of neutral speech Plaintiffs seek to engage in that is not subject to government censorship.  Finally, §57(3) violates Plaintiffs' substantive due process rights (both facially and as-applied) because it infringes upon their fundamental rights and is overly vague without adequate guidance about what conduct constitutes a crime.

The citizens of Michigan are in a critical period before the March 8 and May 3, 2016 elections addressing local ballot proposals.  Plaintiffs, who seek to convey factual information about these proposals, cannot. There is not merely the potential for irreparable harm in the future.  Instead, irreparable harm is happening right now because of the gag on the dissemination of factual information during the 60 day window prior to the March 8 election. Accordingly, for the reasons set forth below, Plaintiffs request that the Court immediately enjoin the operation and

enforcement of §57(3) so that they can exercise their First Amendment rights without fear of criminal repercussions.

## II.   Factual and Legislative Background

### A.   Michigan's Distinction Between Express Advocacy and its Restrictions on Use of Public Funds to Engage in Express Advocacy Prior to Passage of Senate Bill 571

Prior to the events at issue in this lawsuit, the Michigan Campaign Finance Act ("MCFA") differentiated between regulated advocacy and neutral communications. MCL 169.206(2)(b) and (2)(j).

The MCFA has for years prohibited the use of public funds and resources to engage in such express advocacy.  Subsection 57(1) stated:

> A public body or a person acting for a public body shall not use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a). The prohibition under this subsection includes, but is not limited to, using or authorizing the use of public resources to establish or administer a payroll deduction plan to directly or indirectly collect or deliver a contribution to, or make an expenditure for, a committee. Advance payment or reimbursement to a public body does not cure a use of public resources otherwise prohibited by this subsection.

MCL 169.257(1).  This provision, however, did not apply to "the production or dissemination of factual information concerning issues relevant to the function of the public body."  MCL 169.257(1)(b).

**B.      The Surreptitious Passage of Senate Bill 571**

The brief history of SB 571 is as offensive to the democratic process as its content.  On October 20, 2015, Michigan Senator Michael Kowall introduced SB 571.  (Ex 1, SB 571 (as introduced); Ex 2, 2015 Senate Journal at 1672.)   On November 4, 2015, the Senate passed SB 571.  (Ex 3, 2015 Senate Journal at 1781, 1785.)  That version of SB 571 did not include any changes to §57 of the MCFA.  (Ex 4, SB 571 (as passed Senate 11/4/15).)

On December 16, 2015 – the last day of the legislative calendar – Representative Lisa Lyons introduced a substitute bill totaling 53 pages.  (Ex 5, House Substitute for SB 571.)   The substitute bill introduced a host of new provisions, including new §57(3), which gags public bodies and public officials by prohibiting the dissemination of objectively neutral, factual information about ballot questions:

> Except for an election official in the performance of his or her duties under the Michigan election law … **a public body, or a person acting for a public body, shall not, during the period 60 days before an election in which a local ballot question appears on a ballot, use public funds or resources for a communication by means of radio, television, mass mailing, or prerecorded telephone message <u>if that communication references a local ballot question</u>** and is targeted to the relevant electorate where the local ballot question appears on the ballot.

(*Id.* at 53, §57(3) (emphasis added).)   Subsection 57(1)(b) was also changed to reflect that the prior carve-out for the dissemination of "factual information

4

concerning issues relevant to the function of the public body" was now subject to the new §57(3).  (*Id.* at 51, §57(1)(b)). In other words, there is now an express restriction on the dissemination of objectively neutral, factual information.

When the substitute bill was introduced, it was not even announced that it included an amendment to §57. (*See* Ex 6, 2015 House Journal at 2222-23.) Without any substantive debate, including any purported justification for the gag on public speech, the House and Senate passed the substitute bill.  (*Id.*; Ex 7, Legislative Actions on SB 571.)  On January 6, 2016, the Governor signed SB 571 into law as Act 269, with immediate effect.  (Ex 7, Legislative Actions on SB 571.)

Recent comments from legislators following the rushed passage of the substitute bill are startling.  Rep. David Pagel, who voted for Act 269, told the *Detroit Free Press* "It's troubling when you take a vote and later realize that you were ignorant of some facts you should have known."  (Ex 8, 1/7/16 Free Press Article.)  Rep. Larry Inman told Traverse City's *Record Eagle* that "he didn't realize what the last-minute amendment with the 60-day restriction would do when he voted to pass the bill" stating:  "I didn't expect them to do that, so I didn't even know about it... A lot of us were really upset about not being briefed on, where did this come from?" (Ex 9, 1/17/16 Record Eagle Article.)  Even Senator Kowall, who introduced the original SB 571, told the *Free Press* that he was not fully

aware of the last minute substitute when he voted for it. (Ex 8, 1/7/16 Free Press Article.)

**C.    Objectively Neutral Information About Local Ballot Proposals Cannot Be Disseminated Because of §57(3) of Act 269**

As detailed in the Verified Complaint, the Plaintiffs have historically used public resources to disseminate (via mass mailings, television and radio messaging and/or pre-recorded telephone calls) objectively neutral, factual information about local ballot questions during the 60-day period leading up to an election.  (Verified Complaint, ¶¶32 to 83.)  The use of mass mailings, television and radio messaging and/or pre-recorded telephone calls is most effective at reaching the largest group of citizens, including those without regular access to the internet.  (*Id.* at ¶¶ 36, 43, 46, 50, 55, 59, 63, 67, 71, 75, 78, 81.)  Indeed, Plaintiff Stephen Purchase states that he relies on public officials to educate him about the details of bond proposals via mass mailing, radio, television, and pre-recorded telephone messages during the 60 days before the election.  (*Id.* at ¶85.)  Prior to the enactment of §57(3), Plaintiffs intended to communicate factual information in an objectively neutral manner about local ballot proposals during the 60 days before the March 8th and/or May 3rd elections.  However, they have refrained and will refrain from engaging in such First Amendment speech because of the blanket prohibitions in §57(3).  In short, §57(3) chills Plaintiffs' speech and the right of the citizens (including Plaintiffs) to receive objectively neutral information about local ballot questions.

6

## III.    Arguments

**A.    Standards Governing Requests for Injunctive Relief**

In analyzing a request for preliminary injunctive relief under Fed. R. Civ. P. 65, courts must consider the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Am. Civ. Liberties Union Fund of Michigan v. Livingston County*, 796 F.3d 636, 642 (6th Cir. 2015) (quotations omitted). These factors are not prerequisites to relief, but rather are factors to be balanced. *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). The decision of whether a preliminary injunction should issue is within the discretion of the trial court. *Lakeshore Terminal & Pipeline Co. v. Defense Fuel Supply Center,* 777 F.2d 1171, 1172 (6th Cir. 1985).

**B.    Governing First Amendment Principles**

The First Amendment, as applied to the states by the Fourteenth Amendment, prohibits government from making laws "abridging the freedom of speech." U.S. Const. amend. I. "Speech is an essential mechanism of democracy…." *Citizens United v. Fed. Election Commn.*, 558 U.S. 310, 339 (2010). "Political speech 'concerning public affairs is more than self-expression; it

is the essence of self-government.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1051 (6th Cir. 2015) (quoting *Garrison v. Louisiana,* 379 U.S. 64, 74-75, (1964)). "In the context of elections, 'it is our law and our tradition that more speech, not less, is the governing rule.'" *Id.* (quoting *Citizens United,* 558 U.S. at 361).

It is important not just to safeguard the rights of those who speak, but also those who are recipients of speech. Indeed, "[t]he right of citizens to inquire, *to hear*, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it." *Citizens United*, 558 U.S. at 339. (emphasis added). In other words, "the right to receive ideas follows ineluctably from the *sender's* First Amendment right to send them." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (emphasis in original). "More importantly, the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom." *Id.*

Citizens have a right to hear not just from corporations, non-profit organizations and political action committees ("PACs"). Instead, public officials and public employees have an obligation and right to speak, and citizens have a right to hear that speech. This is because "[t]he role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S.

8

375, 395 (1962). *See also Citizens United*, 558 U.S. at 341 ("it is inherent in the nature of the political process that voters must be free to obtain information from diverse sources in order to determine how to cast their votes."); *Bond v. Floyd*, 385 U.S. 116, 135-36 (1966) ("The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy.") Moreover, as Michigan's Attorney General has recognized, "elected officials have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them." Mich. Att'y Gen. Op. No. 4647 (1969) (Ex 10).

## C.    Likelihood of Success on the Merits

### 1.    The Plaintiffs Are Likely to Succeed on their First Amendment Claim

"Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United*, 558 U.S. at 340 (quoting *Fed. Election Commn. v. Wisconsin Right To Life*, 551 U.S. 449, 476 (2007)). *See also Michigan Chamber of Com. v. Land*, 725 F. Supp. 2d 665, 686 (W.D. Mich. 2010) (rejecting argument that law that burdens political speech is "content-neutral," which would subject it to only intermediate scrutiny).   As discussed below, §57(3) will not survive either a "facial challenge" or an "as applied" challenge.

9

### a.   Subsection 57(3) Will Not Survive a Facial Attack

"Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the 'facial challenge' is an 'overbreadth challenge.'" *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013).   "Instead of having to prove that *no* circumstances exist in which the enforcement of the statute would be constitutional, the plaintiff bears a lesser burden: to demonstrate that a substantial number of instances exist in which the law cannot be applied constitutionally." *Id.* (internal quotations and citations omitted, emphasis in original).   This is an exception to the normal rules regarding the standards for facial challenges. *Virginia v. Hicks*, 539 U.S. 113, 118 (2003).

In *Citizens United*, the Supreme Court invalidated a portion of a campaign finance reform statute that was an "outright ban [on speech], backed by criminal sanctions" if a corporation engaged in ***express advocacy*** within 30 days of a primary election and 60 days of a general election. 558 U.S. at 337.   The Court then catalogued acts that would result in criminal sanctions, concluding with the blunt assertion that "[t]hese prohibitions are classic examples of censorship." *Id.* Consequently, the Supreme Court invalidated the express advocacy portions of the statute.

The same result applies here, particularly since the challenged provision targets neutral statements rather than express advocacy.   Subsection 57(3) of Act

269 restricts speech by "a public body, or a person acting for a public body," which necessarily sweeps into its prohibitions any public employee (elected, appointed or a civil servant). Since §57(3) specifically proscribes the use of speech where "public funds or resources" are used, it acts as a gag order on public employees during a critical time in the election cycle when voters are seeking non-partisan and objectively neutral information about ballot proposals. For example, §57(3) makes it a crime for a public official to disseminate a mass mailing reminding the electorate that a ballot question will be on the ballot on March 8th. It is now a crime to explain to the electorate what a mill is; or what a "non-homestead millage" is; the difference between a millage renewal versus a new millage; or even how a ballot question might impact the language of a charter amendment.

There is absolutely no justification for this censorship. Indeed, the challenged provision was inserted into a pending campaign finance form bill in the waning hours of the 2015 legislative session and was passed without any debate or input from the public. The Legislature's failure to create any legislative history for §57(3) prevents Defendants from creating *post hoc* rationales. *See U.S. v. Virginia*, 518 U.S. 515, 533 (1996) ("The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation.")

While there is no legislative history, the rationale expressed by the Governor in his letter accompanying his signature of Act 269 is "to provide clarity to the

11

existing prohibition on the use of public funds or resources to advocate for the passage or defeat of ballot questions." (Ex 11, 1/6/16 SB 571 Signing Letter.)  This purported justification for §57(3) is constitutionally deficient for several reasons.

**First**, §57(3) is over-inclusive because it is not limited to the use of public funds to engage in advocacy. Instead, it prohibits all communications, including objectively neutral, factual information.  This is evidenced by the change to §57(1)(b), which modified the carve-out for communicating "factual information" and instead made such communications subject to the new restrictions in §57(3). Thus, a community newsletter or an election-day reminder mailed to residents would be banned.  Because the Supreme Court "has never recognized a compelling interest in regulating ads … that are neither express advocacy nor its functional equivalent,"[1] §57(3) is unconstitutional. *Wisconsin Right To Life*, 551 U.S. at 476.

**Second**, even if §57(3) targeted only advocacy speech, *Citizens United* indisputably prohibits such restrictions, especially where they are not narrowly tailored.

---

[1] The Supreme Court has explained that a communication "is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Wisconsin Right To Life*, 551 U.S. at 469-70.  An ad or communication that "focus[es] on a legislative issue, take[s] a position on the issue, exhort[s] the public to adopt that position, and urge[s] the public to contact public officials with respect to the matter" is an issue ad, not advocacy or its functional equivalent.  *Id.* at 470. If *Wisconsin Right to Life* found the restrictions on issue ads unconstitutional, then §57(3) broad restriction on objectively neutral communications cannot stand.

**Third**, the presence of "existing prohibitions" on the use of public funds to advocate (in §57(1)) demonstrates that the new, onerous and broader restrictions are not narrowly tailored. *McCutcheon v. Fed. Election Commn.*, 134 S. Ct. 1434, 1446 (2014) ("if a law that restricts political speech does not 'avoid unnecessary abridgement' of First Amendment rights, it cannot survive 'rigorous' review") (quoting *Buckley*, 424 U.S. at 25)).

Subsection 57(3) is also facially unconstitutional because it picks-and-chooses who may engage in political speech prior to an election. As the Supreme Court reiterated in *Citizens United*, "[p]rohibited … are restrictions distinguishing among different speakers, allowing speech by some but not others."[2] 558 U.S. at 340. *See also id.* at 340-41 ("The First Amendment protects speech and speaker, and the ideas that flow from each."). Michigan Attorney General's has made similar pronouncements, recognizing that Supreme Court precedent "[holds] that the state may not impose a stricter standard to an elected legislator in the exercise of his First Amendment rights to freedom of speech than it would apply to its citizens." Mich. Att'y Gen. Op. No. 4647 (1969).

Here, §57(3) improperly restricts all speech referencing ballot questions by public bodies or anyone who might be deemed acting on behalf of a public body

---

[2] It thus makes no difference that *Citizens United* involved private entities, while this case involves restrictions on public employees.

"during the period 60 days before an election in which a local ballot question appears on a ballot." 2015 Mich. Pub. Acts 269, §57(3). At the same time, private interests would be free to engage in political speech during the critical 60-day period. (*See* Ex 11, 1/6/16 SB 571 Signing Letter (attempting to justify censorship of public employees by stating that "there remain many other mechanisms, including private entities, associations and political action committees to encourage support or opposition to a ballot proposal").[3]

As another example of the disparate treatment between public employees and everyone else, §57(3) was adopted nearly verbatim from existing §47(5)(a) of the MCFA. MCL 169.247(5)(a). That provision permits everyone else to make an expenditure for a communication "by means of radio, television, mass mailing, or prerecorded telephone message" if an appropriate disclaimer is added. *Id.* Under §57(3), however, public employees cannot engage in speech at all, regardless of the placement of a disclaimer. This is unconstitutional because "The First Amendment envisions that persons be given the opportunity to inform the community of both sides of the issue under such circumstances." *Wood*, 370 U.S.

---

[3] In *Citizens United*, the Supreme Court rejected the argument that political action committees ("PAC") justify restrictions on First Amendment speech by corporations, noting that "[g]iven the onerous restrictions" on creating and maintaining a PAC, "a corporation may not be able to establish a PAC in time to make its views known regarding candidates and issues in a current campaign." 558 U.S. at 339. The same result applies here.

at 391-92. Even Michigan's Attorney General recognized that such an arrangement offends the First Amendment, stating that "[t]he interest of the public in hearing all sides of a public issue cannot be advanced by extending more protection to citizen-critics than to elected officials." Mich. Att'y Gen. Op. No. 4647 (1969) (citing *Bond v. Floyd*, 385 U.S. 116 (1966)).

Subsection 57(3) of Act 269 also constitutes an impermissible prior restraint on First Amendment rights. "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *New York Times Co. v. U.S.,* 403 U.S. 713, 714 (1971). "A prior restraint … by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." *Stuart*, 427 at 559. "The damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events." *Id.* Here, by imposing a gag on communications during the 60 days prior to an election – with a threat of criminal penalties for violating the gag – §57(3) impermissibly chills Plaintiffs' free speech rights. Indeed, fearing legal repercussions, Ottawa County has instructed officials and employees to not comment at all on local ballot

questions. (Ex 12, 1/15/16 Holland Sentinel Article). Plaintiffs have similarly ceased engaging in speech under the threat of criminal penalties. (*See* Verified Compl, *passim.*) "When Government seeks to use its full power, including the criminal law, to command where a person may get his or her information or what distrusted source he or she may not hear, it uses censorship to control thought. This is unlawful. The First Amendment confirms the freedom to think for ourselves." *Citizens United*, 558 U.S. at 356.

It is irrelevant that §57(3) purports to only restrict communications sent by "means of radio, television, mass mailing, or prerecorded telephone message." This is because even the Governor admits that the statute was designed to target "mass communications concerning ballot questions."[4] (Ex 11, 1/6/16 SB 571 Signing Letter.) Moreover, even if the statute only targets radio, television or mass mailings, this will undoubtedly impact the ability of many citizens to receive communications from their local elected government. According to the most recent figures from the U.S. Census bureau, anywhere from 18 to 32% of households in the major census areas in Michigan (excluding Ann Arbor) do not

---

[4] Although the Governor's signing statement states that "a public body can use its facilities to host debates or town halls on ballot questions," (Ex 11, 1/6/16 SB 571 Signing Letter), this conflicts with the plain language of the statute, which restricts the use of "public funds *or resources.*" Moreover, §57(3) would make it a crime for public officials to notify the public of the town hall by mass mailing if it "references" the local ballot question.

16

have high speed internet access.  (Ex 12, U.S. Census Bureau, Computer and Internet Access in the United States: 2013, Appx Table D.)[5]

The fact that §57(3) targets speech about "a local ballot question"[6] does not justify a total blackout on communications.  "In the realm of protected speech, the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 784-85 (1978).  In other words, "channel[ing] the expression of views is unacceptable under the First Amendment." *Id.* at 785.  Additionally, there is no compelling state interest in banning neutral communications on local ballot questions, while permitting the same type of communications on state-wide issues.

Overall, the State of Michigan does not have a compelling governmental interest in restricting public employees from engage in core First Amendment activity: political speech.  The Supreme Court has recognized the importance of public employee speech, emphasizing that the role they play "makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood*, 370 U.S. at 395.  "The censorship we now confront is

---

[5]        The complete figures are available at http://www.census.gov/hhes/computer/publications/2013.html (visited 1/20/16.)

[6] "Local ballot question" is defined as "a ballot question of a local unit of government to be voted upon in that local unit of government."  2015 Mich. Pub. Acts 269, §9(5).

17

vast in its reach. The Government has muffle[d] the voices that best represent the most significant segments of the economy. And the electorate [has been] deprived of information, knowledge and opinion vital to its function." *Citizens United*, 558 U.S. at 354 (internal quotations omitted).

### b.      Subsection 57(3) Will Not Survive an "As-Applied" Attack

Courts apply an objective approach when considering an "as-applied" challenge "focusing on the substance of the communication rather than amorphous considerations of intent and effect." *Wisconsin Right To Life*, 551 U.S. at 469. Critically important, the court "must give the benefit of any doubt to protecting rather than stifling speech." *Id.*

For example, §57(3) prevents Plaintiff Douglas Alexander, City Manager for the City of Algonac, from providing factual information about a ballot proposal *that is actually designed to save taxpayer money* because, if passed, the Coast Guard (and not Algonac) will repair the seawall.  (Verified Compl, ¶¶37 to 40.) This simple example obliterates any supposed government interest in controlling speech as a means to preserve taxpayer funds.  As another example, Plaintiff Robert Taylor, Mayor for the City of Roseville, intended to disseminate factual information about a millage proposal for the purpose of equipping, manning, operating, and training personnel for the City's Advanced Life Support Emergency Medical Service System. (*Id.*, ¶¶35 to 36.) Plaintiff Taylor planned to use mass

18

mailings, radio, television, and pre-recorded telephone messages because, in his view, those are the most effective means of educating a linguistically, culturally and economically diverse electorate.  (*Id.*)  Subsection 57(3), however, gags this intended speech.  Overall, as-applied to the factual information that the Plaintiffs seek to disseminate,[7] §57(3) is unconstitutional.

### 2.    Substantive Due Process

"The violation of a fundamental right … is necessary for a successful substantive due process claim." *Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000).  "The right to freedom of expression should [be] viewed as a fundamental right in the substantive due process analysis." *Id.*  "Where, as here, state action infringes upon a fundamental right, 'such action will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest.'" *Love v. Johnson*, _ F. Supp. 3d _, 2015 WL 7180471, at *5 (E.D. Mich. Nov. 16, 2015) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998)).  As discussed above, the State of Michigan has no compelling interest in restricting the speech of public employees.

---

[7] In the even the Court does not resolve this case on the facial challenge, and receives testimony on the as-applied challenge, Plaintiffs will present additional testimony at a hearing describing how §57(3) is unconstitutional as applied to their intended speech.

Moreover, §57(3) is also unconstitutionally vague. The void for vagueness doctrine requires that statutes provide (1) fair warning of proscribed conduct and (2) precision and guidance to avoid arbitrary enforcement. *F.C.C. v. Fox TV Stations*, 132 S. Ct. 2307, 2317 (2012). Courts employ a two-part test to determine whether a statute is impermissibly vague. First, "the court must determine whether the law gives a person 'of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *Doe v. Snyder*, 101 F. Supp. 3d 672, 681 (E.D. Mich. 2015) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Second, "the court must evaluate whether the statute provides sufficiently 'explicit standards for those who apply them' or whether, due to a statute's vagueness, it 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.'" *Id.* "'[T]he degree of vagueness that the Constitution tolerates'" varies, with "[a] more stringent test applies if the provision interferes with constitutional rights." *Assn. of Cleveland Fire Fighters v. City of Cleveland*, Ohio, 502 F.3d 545, 551 (6th Cir. 2007) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 498 (1982)).

Subsection 57(3) is vague because it places public employees in a quandary about what speech is and is not permitted, at risk of criminal sanctions. For example, the Governor states in his signing letter that under the statute, "a public

20

body can use its facilities to host debates or town halls on ballot questions." (Ex 11, 1/6/16 SB 571 Signing Letter.)  But, under the plain language of §57(3), public employees would be prohibited from printing objectively neutral fliers promoting the town hall meeting about the ballot proposal, even if there is a disclaimer stating that the town does not take a position on the ballot proposal. In other words, the effect of §57(3) would be a town hall meeting without participants, hardly what the First Amendment envisions.  And, even if the town hall meeting takes place with public official participation, it could not be televised over public access broadcast television. This is because under the statute, the public official would be using public resources (the town hall and public access television) to discuss a ballot issue, with the communication occurring (in part) over television. These uncertainties unconstitutionally chill First Amendment free speech rights.

Subsection 57(3) would also silence discussions during city council or board meetings that are broadcast over public access television.  For example, several Plaintiffs have millage or bond proposals on the March 8, 2016 and May 3, 2016 ballots.  (Verified Compl, ¶¶35, 42, 49, 54, 58, 62, 66, 70, 74, 77, 80.)  If the local entities broadcast public meetings over public access television, Plaintiffs would be unable to even reference the millage proposals during budget discussions.  Thus, not only does §57(3) prevent Plaintiffs from engaging in speech, it would also

prevent them from fulfilling their duties. Robust discussion will be replaced with silence.

**D.    The Remaining Preliminary Injunction Factors Favor the Issuance of an Injunction**

   **1.    Plaintiffs Will Suffer Irreparable Injury Absent Injunctive Relief**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) (citing *Elrod v Burns*, 427 U.S. 347, 373 (1976)). Accordingly, because Plaintiffs established a likelihood of success on the merits of their First Amendment claim, they have established irreparable harm. *Am. Civ. Liberties Union Fund of Michigan v. Livingston County*, 23 F. Supp. 3d 834, 843 (E.D. Mich. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed.")

   **2.    An Injunction Will Not Cause Substantial Harm to Others**

Plaintiffs' substantial likelihood of success on the merits inextricably leads to the conclusion that an injunction will harm others. This is because "if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Deja Vu of*

22

*Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001). Accordingly, this factor weighs in favor of an injunction.

### 3. Public Interest Favors an Injunction to Protect First Amendment Rights

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Commn.*, 23 F.3d 1071, 1079 (6th Cir. 1994). The State of Michigan's purported interest in controlling taxpayer resources does not outweigh the interest in enforcing constitutional rights. Thus, the public interest weighs in favor of an injunction.

## IV. Conclusion

Defendants will be unable to demonstrate that there is a compelling governmental interest in suppressing First Amendment speech that is objectively neutral. And if Defendants contend that they are attempting to prohibit advocacy (or its functional equivalent) by using public funds or resources, §57(3) is not narrowly tailored because it prohibits speech that is neither advocacy nor its functional equivalent. Plaintiffs have demonstrated a substantial likelihood of success on their claims and have established that the remaining factors favor granting injunctive relief. Accordingly, Plaintiffs request the entry of a Temporary Restraining Order enjoining Defendants from enforcing §57(3) of Act 269 or acting pursuant to §57(3) to restrict Plaintiffs from disseminating objectively neutral fact information about ballot questions and an Order to Show Cause Why a

23

Preliminary Injunction Should Not Issue.  Alternatively, Defendants request that the Court schedule a hearing at the earliest possible time and, after a hearing, issue a preliminary injunction.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK and STONE, P.L.C.

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Michael J. Hodge (P25146)
*Attorneys for Plaintiffs*
One Michigan Avenue
Lansing MI 48933
eldridge@millercanfield.com
hodge@millercanfield.com

Jerome R. Watson (P27082)
Brian M. Schwartz (P69018)
*Attorneys for Plaintiffs*
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
schwartzb@millercanfield.com
watson@millercanfield.com

Dated:  January 26, 2015

25863747.2\088888-03310