UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TAYLOR, Mayor, City of Roseville;
DOUGLAS R. ALEXANDER, City Manager,
City of Algonac; MATTHEW BIERLEIN,
County Commissioner, Tuscola County;
DONALD LYONS, Mayor, City of Dowagiac;
TODD R. ROBINSON, Superintendent, New
Haven Community Schools; RUSSELL
PICKELL, Superintendent, Riverview
Community Schools; KELLY COFFIN,
Superintendent, Tecumseh Public Schools;
KIMBERLY AMSTUTZ-WILD, School Board
President, Tecumseh Public Schools; KEITH
WUNDERLICH, Superintendent, Waterford
School District; ROBERT SEETERLIN, School
Board President, Waterford School District;
MICHELLE IMBRUNONE, Superintendent,
Goodrich Area Schools; DAVID P. PRAY,
Superintendent, Clinton Community Schools;
PATRICIA MURPHY-ALDERMAN,
Superintendent, Bryon Area Schools; AMY
LAWRENCE, School Board President, Byron
Area Schools; AMY LAWRENCE, School
Board President, Byron Area Schools; ROBERT
D. LIVERNOIS, Superintendent, Warren
Consolidated School District; YVONNE
CAAMAL CANUL, Superintendent, Lansing
School District; in their individual and official
capacities; and STEPHEN PURCHASE, in his
individual capacity,

       Plaintiffs,

v

No. 2:16-cv-10256

HON. JOHN CORBETT
O'MEARA

MAG. R. STEVEN WHALEN

**DEFENDANTS'
RESPONSE IN
OPPOSITION TO
PLAINTIFFS'** *EX PARTE*
**MOTION FOR A
TEMPORARY
RESTRAINING ORDER
AND A PRELIMINARY
INJUNCTION**

RUTH JOHNSON, in her official capacity as
Secretary of the State of Michigan; and the
STATE OF MICHIGAN,

      Defendants.
_____/

Scott R. Eldridge (P66452)
Michael J. Hodge (P25146)
Attorneys for Plaintiffs
One Michigan Avenue
Lansing, Michigan  48933

Jerome R. Watson (P27082)
Brian M. Schwartz (P69018)
Attorneys for Plaintiffs
150 West Jefferson, Ste 2500
Detroit, Michigan  48226
313.963.6420

Denise C. Barton (P41535)
Joseph Y. Ho (P77390)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
_____/


## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

Table of Contents .......................................................... i

Controlling or Most Appropriate Authority ...................................... iii

Introduction ............................................................. 1

Counter-Statement of Facts................................................. 2

    Nature of the Case ................................................. 2

    The Purpose of § 57 of the MCFA ....................................... 2

    The Passage of P.A. 269 and Subsequent Legislative History ................... 4

Argument ............................................................... 5

I.    The injunction standard........................................... 5

II.    Plaintiffs are not likely to succeed on the merits. ...................... 5

    A.    The official-capacity Plaintiffs cannot assert a First-Amendment claim because their respective local government units are not entitled to First-Amendment protections. ..................... 5

    B.    The State has a rational basis to justify the challenged provision. .................................................. 9

    C.    The Plaintiffs lack standing to bring the suit................... 10

    D.    The challenged provision does not violate the Due Process Clause because it is not unconstitutionally vague........................... 13

        1.    A person of ordinary intelligence would know what type of communication is limited by § 57(3). ............................. 14

        2.    Subsection 57(3) of the MCFA provides the constitutionally requisite minimal law enforcement guidelines......................................................... 16

i

E. *Burford* abstention is proper because this case is a state public policy issue masquerading as a First Amendment claim. ............... 18

III. The remaining preliminary injunction factors do not favor the issuance of an injunction. .................................................................... 20

A. Plaintiffs have not demonstrated irreparable injury ........................ 20

B. An injunction would be premature as Plaintiffs' arguments may prove to be moot. ....................................................................... 21

C. Public interest favors that the legislative and regulatory processes be allowed to address the contested provision. ................ 22

Conclusion and Relief Requested .................................................................. 22

ii

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>:

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012)

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)

*Grayned v. City of Rockford*, 408 U.S. 104 (1971)

*Hunter v. Pittsburgh*, 207 U.S. 161 (1907)

*Jonson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Mich. Educ. Ass'n v. Sec'y of State*, 801 N.W.2d 35, 40 (Mich. 2011)

*Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585 (6th Cir. 2003)

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009)


Mich. Comp. Laws § 169.257

## INTRODUCTION

For many years, Michigan's campaign finance system has regulated public bodies and generally prohibited them from using public resources to make a contribution or expenditure for political purposes. Mich. Comp. Laws § 169.257(1). The clear purpose of this public policy is to "mandate the separation of the government from politics in order to maintain governmental neutrality in election, preserve fair democratic purposes, and prevent taxpayer funds from being used to subsidize partisan political activities." *Mich. Educ. Ass'n v. Sec'y of State*, 801 N.W.2d 35, 40 (Mich. 2011).

Recently, the Michigan Legislature decided to amend that comprehensive campaign finance law. Plaintiffs' lawsuit challenges a subsection of one of those provisions. Mich. Comp. Laws § 169.257(3). While this lawsuit raises important public policy issues regarding when public resources can be used by public officials when engaging in electioneering, they are not, as Plaintiffs contend, of constitutional proportions. Rather, these public policy issues continue to be best addressed by the legislative and regulatory system of the State of Michigan. Thus, for the reasons stated in this brief, Defendants respectfully request that this Court deny Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order and a Preliminary Injunction.

## COUNTER-STATEMENT OF FACTS

**Nature of the Case**

Of the eighteen Plaintiffs in this suit, seventeen are local officials of a Michigan municipality or school district, and the last is a private citizen. Plaintiffs challenge 2015 Public Act 269 (P.A. 269), which amended the Michigan Campaign Finance Act (MCFA), Mich. Compl. § 169.201, *et seq*. Specifically, Plaintiffs challenge the constitutionality of the amendment to § 57 of the MCFA to prohibit certain communication relating to a local ballot question within the sixty days prior to the election.

All of the seventeen Michigan municipalities and school districts are entities within the State of Michigan. These seventeen entities are created by and receive their powers from the State. Although the seventeen officials bring this suit in both their official and individual capacities, the complaint alleges only official conduct by these local officials. (R. 1, Compl. Pg. ID #9-21.) Accordingly, these local officials' claims are brought in their official capacity only. Defendants will refer to the seventeen local officials as official-capacity Plaintiffs and to Stephen Purchase as private-citizen Plaintiff.

**The Purpose of § 57 of the MCFA**

Section 11 of the MCFA defines a "public body" as one or more of the following:

2

(a) A state agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.

(b) The legislature or an agency, board, commission, or council in the legislative branch of state government.

(c) A county, city, township, village, intercounty, intercity, or regional governing body; a council, school district, special district, or municipal corporation; or a board, department, commission, or council or an agency of a board, department, commission, or council.

(d) Any other body that is created by state or local authority or is primarily funded by or through state or local authority, if the body exercises governmental or proprietary authority or performs a governmental or proprietary function.

Mich. Comp. Laws § 169.211.  Section 57 of the MCFA prohibits a "public body or a person acting for a public body" from using public resources "to make a contribution or expenditure" for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.  *Id.* § 169.257(1).  "The clear purpose of § 57, as reflected in its language, is to mandate the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities."  *Mich. Educ. Ass'n*, 801 N.W.2d at 40.

Section 57 includes several exceptions to this prohibition, and prior to P.A. 269, § 57(1)(b) provided a following particular carve-out: "[t]he production or dissemination of factual information concerning issues relevant to the function of

3

the public body." P.A. 269 amended § 57(1)(b) to qualify the carve-out; this

exception is stated in the new § 57(3):

> Except for an election official in the performance of his or her duties under the Michigan election law . . . a public body, or a person acting for a public body, shall not, during the period 60 days before an election in which a local ballot question appears on a ballot, use public funds or resources for a communication by means of radio, television, mass mailing, or prerecorded telephone message if that communication references a local ballot question and is targeted to the relevant electorate where the local ballot question appears on the ballot.

The purpose of § 57(3) is to prohibit communications that are plain attempts to

influence voters to vote in a particular way without using words like "vote for" or

"support." (R. 3-2, Pg. ID #269-270.)

**The Passage of P.A. 269 and Subsequent Legislative History**

The Legislature passed the amended P.A. 269 on December 16, 2015. In

addition to the contested provision, P.A. 269 addressed many other issues not

relevant to this lawsuit. Upon Governor Richard Snyder's signing on January 6,

2016, the law became effective immediately. Governor Snyder issued a signing

statement acknowledging concerns over § 57(3) and encouraging the Legislature to

pass follow-up legislation to further clarify § 57(3). (R. 3-2, Pg. ID #269–270.)

Since then, there have been two bills introduced in the Michigan Senate (Nos.

0703, 0721), and three bills introduced in the Michigan House (Nos. 5219, 5221,

5249) directed at amending or even appealing § 57(3).

4

## ARGUMENT

### I.     The injunction standard.

Courts balance four factors in determining whether to grant a temporary or preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).  In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits."  *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007).  This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]."  *Id.*

### II.    Plaintiffs are not likely to succeed on the merits.

Plaintiffs' substantive arguments with respect to their First Amendment and Substantive Due Process claims fail for a number of reasons.

#### A.     The official-capacity Plaintiffs cannot assert a First-Amendment claim because their respective local government units are not entitled to First-Amendment protections.

"Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the

5

State to assist in the carrying out of state governmental functions." *Reynolds v. Sims*, 377 U.S. 533, 575 (1964).  Moreover, these entities receive all their powers from the State, and "the number, nature, and duration of the powers conferred upon these [entities] and the territory over which they shall be exercised rests in the absolute discretion of the State." *Hunter v. Pittsburgh*, 207 U.S. 161, 178-79 (1907).  Accordingly, a State may take action even including destroying the municipal corporation entirely, "conditionally or unconditionally, with or without the consent of the citizens, or even against their protest," and may do so "unrestrained by any provision of the Constitution of the United States." *Id.* Based on these principles, the *Hunter* Court upheld an act authorizing city consolidation and providing for the temporary government and payment of debts of the consolidated city.  *Id.* at 179.

Although the Supreme Court has since placed some limitations on this expansive power—none of which apply here[1]—*Hunter* remains good law.  *See*

---

[1] Neither states nor their political subdivisions may draw boundaries that discriminate on an invidious basis, such as race or sex.  *Gomillion v. Lightfoot,* 364 U.S. 339, 341 (1960) (rejecting an Alabama boundary statute that removed "all save four or five of [a city's] 400" black voters).  Also, equal protection prohibits states from restricting or diluting votes in violation of the "one person, one vote" principle announced in *Reynolds* and extended to local governments in *Avery v. Midland County,* 390 U.S. 474 (1968).  Similarly, unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government.  *Kramer v. Union Free Sch. Dist. No. 15,* 395 U.S. 621, 626 (1969).

6

*Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 47 (1994) (citing *Hunter* and

affirming that "ultimate control of every state-created entity resides with the State

. . . [and p]olitical subdivisions exist solely at the whim and behest of their State")

(internal quotation marks omitted); *Kelley v. Metro. Cnty. Bd. of Educ. of Nashville*

*& Davidson Cnty., Tenn*., 836 F.2d 986, 994 (6th Cir. 1987).  Moreover, the

Supreme Court has explicitly held that a local government unit does not enjoy First

Amendment protections:

> A private corporation is subject to the government's legal authority to
> regulate its conduct. A political subdivision, on the other hand, is a
> subordinate unit of government created by the State to carry out
> delegated governmental functions.  A private corporation enjoys
> constitutional protections, but a political subdivision, "created by the
> state for the better ordering of government, has no privileges or
> immunities under the federal constitution which it may invoke in
> opposition to the will of its creator."

*Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363-64 (2009) (quoting *Williams v.*

*Mayor of Baltimore*, 289 U.S. 36, 40 (1933); other citations omitted).  *Pocatello*

*Educ. Ass'n* involved a First-Amendment challenge by public-employee unions

contesting a state limitation on public-employee payroll deductions for political

activities.  *Id.* at 355.  The unions conceded that the limitation was valid at the

State level but argued that the limitation violated the First Amendment rights as

applied to "county, municipal, school district, and other local public" employees.

*Id.*  The unions analogized the local government unit to a private utility company

subject to regulation by a public entity.  *Id.* at 362–63.  The Supreme Court

7

rejected this comparison and held that public subdivisions do not enjoy the same First-Amendment protections afforded to private entities. *Id.* The Supreme Court concluded that the State need not "affirmatively assist political speech." *Id.* at 364; *see also Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 549 (1983) ("[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny."). Furthermore, *Citizens United v. Federal Election Comm'n*, 130 S. Ct. 876 (2010) does not change this, as it is inapplicable in the present case. That case dealt solely with the First Amendment rights of private corporations, not public bodies that exist, and derive their powers, exclusively from the authority granted by the State.

These cases stand for the simple proposition that a municipality or school corporation does not enjoy First-Amendment protections. It logically follows that an agent of a municipality or school district cannot assert a right not enjoyed by that entity. Here, the official-capacity Plaintiffs' basis to sue in that capacity is premised upon their status as local officials of these local Michigan entities. Also, the only way that the official-capacity Plaintiffs would trigger § 57(3) is if they were acting in their official capacities on behalf of their respective entity and using public resources to make certain communications. Moreover, even if the official-capacity Plaintiffs have sincerely held opinions, the State is not obligated to subsidize that opinion with public resources. *Id.* In short, the local government

8

units are not entitled to First-Amendment protections and the State need only

demonstrate a rational basis to justify its passage of § 57(3).

**B.    The State has a rational basis to justify the challenged provision.**

Subsection 57(3) of the MCFA is subject to rational basis review, if it is

subjected to any review.  *Jonson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

To survive rational basis scrutiny, § 57(3) need only be "rationally related to

legitimate government interests[,]" *Doe v. Mich. Dep't of State Police*, 490 F.3d

491, 501 (6th Cir. 2007) (internal quotation marks and citation omitted), and "must

be upheld . . . if there is any reasonably conceivable state of facts that could

provide a rational basis" for the government action.  *F.C.C. v. Beach Commc'ns,

Inc*., 508 U.S. 307, 313 (1993).

Again, the "clear purpose of § 57, as reflected in its language, is to mandate

the separation of the government from politics in order to maintain governmental

neutrality in elections, preserve fair democratic processes, and prevent taxpayer

funds from being used to subsidize partisan political activities."  *Mich. Educ.

Ass'n*, 801 N.W.2d at 40.  Subsection 57(3) follows this "clear purpose."  In

*Pocatello Educ. Ass'n*, the Supreme Court recognized as a rational justification

"the State's interest in avoiding the reality or appearance of government favoritism

or entanglement with partisan politics."  555 U.S. at 359.  At this juncture, it is

worth repeating exactly what the contested provision did—it eliminated certain

9

government-initiated and publically-funded mass communications regarding ballot initiatives in which the local government unit undoubtedly had a vested interest. Subsection 57(3) now prevents such communications within sixty days of the election. But § 57(3) still allows for other means by which a local government unit or its officials may speak on its behalf. In sum, § 57(3) serves a rational basis and is therefore constitutional.

### C.     The Plaintiffs lack standing to bring the suit.

To invoke the subject-matter jurisdiction of an Article III federal court, individual plaintiffs must establish, among other things, an injury-in-fact that is concrete and particularized, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As individuals, none of the Plaintiffs have suffered any concrete or particularized injuries. The Plaintiffs claim that they are residents within their respective municipality or serve as an official of their respective local government units. (R. 1, Compl. ¶¶ 32-83.) None of the represented local government units is a party to this suit. (*Id.*) To the extent that some Plaintiffs may purport to bring this action in their official capacities, nothing in the complaint suggests that their respective local government units have authorized any of them to act on the units' behalf in filing this suit.

Further, Plaintiffs do not allege that the local government units to which these Plaintiffs belong have been injured[2] by the challenged provision, or that membership in them—either as officials or private citizens—makes any of them the victim of any particular future harm. *Lujan*, 504 U.S. at 560–61. Indeed, the challenged provision only limits the actions of "a public body or a person acting for a public body"—not the actions of an individual. In short, Plaintiffs do not allege that Defendants' actions have injured them in a manner distinguishable from the harm incurred by any other resident within the State.

To the contrary, these Plaintiffs raise only general grievances regarding Defendants' public policy choices as to how a subdivision within the State may make certain communications to its constituents. The Plaintiffs' claims are strikingly similar to those considered and easily rejected by the Supreme Court, the Sixth Circuit, and this Court. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (no standing for Los Angeles resident challenging police department's chokehold policy because plaintiff was "no more entitled to an injunction than any other citizen of Los Angeles"); *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 126-28 (6th Cir. 1995) (no standing for resident challenging city charter amendment

---

[2] Indeed, Plaintiffs' complaint does not use the word "injured" and mentions "injury" only once: "Subsection 57(3) of Act 269 places each public official Plaintiff's liberty at stake, causing immediate and irreparable injury." (R. 1, Compl. ¶ 116.) Plaintiffs' motion and brief in support mention "injury" only seven times: twice in the headings and four times as quotes to a cited caselaw.

11

when she had "suffered no harm, nor will she suffer any greater harm than that of any other voter in the City of Cincinnati"); *Anthony v. Michigan*, 35 F. Supp. 2d 989, 1003 (E.D. Mich. 1999) (no standing for Detroit citizens challenging consolidation of Detroit Recorder's Court because plaintiffs did not "articulate how they [were] *particularly* harmed as a result of the merger") (emphasis in original).

Finally, although the official-capacity Plaintiffs bring this suit in both their official and individual capacities, the complaint does not delineate any individualized injury suffered by them. Only the private-citizen Plaintiff alleged any individualized claim, and the only alleged individual claim is the First Amendment right to receive information. Although the First Amendment protects an individual's right to receive information, there is no cognizable First Amendment right to receive information by particular means. *See Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 591-92 (6th Cir. 2003) ("While the Library regulation at issue in this case is also content-neutral, it does not directly impact the right to receive information. Therefore, applying the heightened scrutiny standard . . . to the Library regulation is not appropriate."). Here, the private-citizen Plaintiff has failed to allege how § 57(3) directly infringes upon his right to receive information. The private-citizen Plaintiff is not subject to prosecution or punishment under § 57(3), and may receive information by

12

alternative means.  For example, the private-citizen Plaintiff may send a letter to

his respective local government unit, solicit information from that unit or its

officials, submit a Freedom-of-Information-Act request, attend a public meeting, or

use social media to receive information relevant to local ballot initiatives.  Upon

these facts, the private-citizen Plaintiff has failed to demonstrate sufficient

individualized injury to establish standing.

> **D.    The challenged provision does not violate the Due Process Clause because it is not unconstitutionally vague.**

Plaintiffs claim that § 57(3) is unconstitutionally vague and therefore

violates the Due Process Clause of the Fourteenth Amendment to the United States

Constitution.  (R. 3, Mot. for a TRO and a Prelim. Inj. at 34.)  The classification of

a statute as void for vagueness is a significant matter.  "The elementary rule is that

every reasonable construction must be resorted to, in order to save a statute from

unconstitutionality."  *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. &*

*Constr. Trades Council*, 485 U.S. 568, 575 (1988) (quotation omitted).

The vagueness doctrine has two primary goals.  *United States v Caseer*, 399

F.3d 828, 835 (6th Cir. 2005).  The first is to ensure fair notice to the citizenry; the

second is to provide standards for enforcement by the police, judges, and juries.  *Id.*

Vague laws are subject to particular scrutiny when criminal sanctions are

threatened or constitutional rights are at risk.  *Id.*

13

### 1.   A person of ordinary intelligence would know what type of communication is limited by § 57(3).

The notice goal of the vagueness doctrine asks whether "a person of ordinary intelligence could identify the applicable standard for inclusion and exclusion." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1971).  In *Grayned*, the Supreme Court upheld an anti-noise ordinance that stated, "[N]o person . . . adjacent to . . . a school . . . in session . . . shall willfully make . . . any noise or diversion which disturbs or tends to disturb the peace or good order of such school session" against a vagueness challenge.  *Id.* at 112.  The Court held that the ordinance was sufficiently precise because the conduct was prohibited at a fixed place at fixed times, finding that "given this 'particular context,' the ordinance gives 'fair notice to whom [it] is directed.'"  *Id.*

Like the anti-noise ordinance in *Grayned*, the language of the statute at issue here is specific when viewed within the narrow context of the regulatory structure of the MCFA.  Subsection 57(1) prohibits a "public body or a person acting for a public body" from using public resources "to make a contribution or expenditure" for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.  The MCFA defines "contributions" and "expenditures" broadly, and these definitions encompass "the nomination or election of a candidate, for the qualification, passage, or defeat of a ballot question, or for the qualification of a new political party."  Mich. Comp.

14

Laws § 169.204 (defining contributions); *Id.* § 169.206 (defining expenditures).  A person of average intelligence would understand that the MCFA generally prohibited the spending of any public resources for political purposes.

As noted above, prior to the passage of P.A. 269, § 57(1)(b) provided a carve-out to the prohibition by allowing the spending of public resources for "[t]he production or dissemination of factual information concerning issues relevant to the function of the public body."  A person of average intelligence would understand that this carve-out allowed the use of public resources to disseminate "factual information."  Following the passage of P.A. 269, § 57(1)(b), this carve-out was subject to the new § 57(3), which meant that the carve-out was no longer available to certain forms of communication made within a period of sixty days prior to the election.  Stated differently, a person of average intelligence would understand that within a definite time period of sixty days before an election, "a public body[] or a person acting for a public body" cannot use public resources to engage in mass communication by "radio, television, mass mailing, or prerecorded telephone message" that "reference a local ballot question and is targeted" to the electorate deciding the question.

Thus, even though "we cannot expect mathematical certainty from our language," the meaning of the individual words used to express the limitations set forth in the statute does not rely on subject interpretations and can be extrapolated

15

from the purpose of the statute as a whole.  *Hill*, 530 U.S. at 733.  In short, a

person of normal intelligence would be able to identify the kinds of

communication that would be made for the "passage or defeat" of a ballot

question.  When the meaning of a word or phrase is commonly understood, a

statute's failure to define the term will not render the statute void for vagueness.

*Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 558 (6th Cir.

1999).  The statute need not define with mathematical precision the conduct

forbidden.  *Columbia*, 58 F.3d at 1108.  Subsection 57(3) of the MCFA complies

with this minimum degree of definiteness and therefore is not unconstitutionally

vague.  In short, the statute provides a substantial framework in which to

understand the kinds of conduct that would be electioneering in nature and

therefore prohibited.  Thus, the statute gives fair notice of the proscribed

communication.

###       2.       Subsection 57(3) of the MCFA provides the constitutionally requisite minimal law enforcement guidelines.

The second goal of the vagueness doctrine—to provide minimal

enforcement standards—is related to the first.  While the first involves notice to

those charged with obeying the law, the second relates to notice to those who must

enforce the law, whether police, judges, or juries.  The standards of enforcement

must be precise enough to avoid "involving so many factors of varying effect that

neither the person to decide in advance nor the jury after the fact can safely and

certainly judge the result." *Columbia*, 58 F.3d at 1105. Therefore, a statute will be held void for vagueness if it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc basis." *Grayned*, 408 U.S. at 108-09. Practically, this concern is more important, as it reflects the common-sense understanding that the average citizen does not know every federal, state, and local statute to which he is subject. *Columbia*, 58 F.3d at 1105.

In analyzing vagueness challenges, the Sixth Circuit has discussed the importance of a controlling standard of conduct by which law enforcement can measure the prohibited behavior. *Bzdzuich v. U.S. Drug Enf't Admin.*, 76 F.3d 738, 743 (6th Cir. 1996). In *Bzdzuich*, the defendant had developed a procedure for employers who wish to employ persons who would be subject to certain federal regulation. *Id.* Here, the MCFA has a controlling standard: "a public body[] or a person acting for a public body" cannot use public resources to engage in radio, television, mass mailing, or robo-calls that "reference a local ballot question and is targeted" to the electorate deciding the ballot question. The terms of the statute are found throughout the law and are within the understanding of ordinary people, including law enforcement officers. They would know the kind of communication that would fall under one of the four prescribed methods, that referenced a local ballot question, that targeted a certain electorate, and that was for the "passage or defeat" of the ballot question. "Enforcement requires the exercise of some degree

17

of police judgment." *Grayned*, 408 U.S. at 114. Here, the degree of judgment is acceptable. Under Michigan's Campaign Finance Act, the primary enforcement mechanism is through a complaint procedure initiated with the Secretary of State. Mich. Comp. Laws 169.215. It is only if the Secretary of State is unable to correct or prevent a further violation through information methods such as a conference, conciliation, or persuasion, that the matter could be referred to the Attorney General for enforcement of any criminal penalty. Mich. Comp. Laws 169.215(10). Accordingly, the challenged statute is not vague.

### E.   *Burford* abstention is proper because this case is a state public policy issue masquerading as a First Amendment claim.

*Burford* abstention requires "careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943)). The Supreme Court has explained that *Burford* abstention is appropriate where timely and adequate state-court review is available and (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv. Inc. v. Council of the City of New*

18

*Orleans*, 491 U.S. 350, 361 (1989) (quotation omitted); *see also Ada-Cascade Watch Co. v. Cascade Res. Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983) (citing *Burford*'s enunciation of two factors that justify abstention: the presence of a complex state regulatory scheme which would be disrupted by federal review, or the existence of a state-created forum with specialized competence in the particular area).

Here, the central issue is a state public policy issue masquerading as First-Amendment and Due-Process claims. As discussed previously, the local government units are subdivisions of the State and cannot assert First Amendment protections against the State. And there is no due process problem because § 57(3) is not unconstitutionally vague. Thus, the central issue boils down to the State of Michigan's policy determination as to how local government units should use their limited public resources. Currently, the Michigan Legislature has five pending bills attempting to address this disagreement over public policy. The Plaintiffs can avail themselves of the democratic process to participate in this ongoing process to achieve their goals.

Moreover, MCFA has established a regulatory scheme to address any specific concerns that the Plaintiffs may have. Pursuant to MCFA § 15, the Plaintiffs request a declaratory ruling from the Michigan Secretary of State as to what is or is not permissible under § 57(3), if they are confused by its plain

19

language.  Mich. Comp. Laws § 169.215.  Instead, Plaintiffs have disregarded this

regulatory scheme and invite this Court to substitute its own judgment for that of

the State's expert with respect to the MCFA.  This Court should reject Plaintiffs'

invitation to disrupt this State's regulatory and legislative system for addressing

this public policy issue.  The Michigan Secretary of State is a special forum with

specialized competence relating to Michigan campaign finance regulations.  This

Court should therefore abstain because the State interests in this case trump

whatever rights that may be implicated by the contested statute.

### III.    The remaining preliminary injunction factors do not favor the issuance of an injunction.

#### A.    Plaintiffs have not demonstrated irreparable injury

Plaintiffs have not demonstrated sufficient requisite injury to establish

standing.  Specifically, Plaintiffs have not demonstrated individualized or

cognizable injury.  It therefore follows that Plaintiffs have not demonstrated

*irreparable* injury necessary for an injunction.  As discussed *supra*, MCFA §

57(3), as amended, only prohibits certain communication by the "public body[] or

a person acting for a public body"—i.e., the use of public resources to engage in

certain communication—it does not prohibit the public body from otherwise

informing its constituents by manners not otherwise enumerated in § 57(3).  Only §

57(1)(b) is subject to the limitations established by § 57(3).  Accordingly, the

official-capacity Plaintiffs may participate in any communication allowable by §

20

57(1)(a) (expression of own views), (1)(d) (use of public facility to host debates or town halls on ballot questions), and (1)(f) (expression of personal views on personal time), provided that such communication does not also fall under § 57(1)(b). For example, a public body or its agents may hold public meetings, correspond with any constituents individually, or disseminate information by social media. Similarly, a private citizen has a multitude of ways to receive information relating to the ballot questions—he or she may correspond individually with the public body or its agents, submit a Freedom-of-Information-Act request, attend a public meeting, or use social media. In other words, the Plaintiffs have a vast variety of means by which to send and receive factual and informative communication regarding the ballot questions.

### B.    An injunction would be premature as Plaintiffs' arguments may prove to be moot.

An injunction would likely be premature as Plaintiffs' arguments may prove to be moot. As of this writing, there are five pending bills in the Michigan Legislature addressing § 57(3). These bills may amend § 57(3), eliminate it, or provide clarification and guidance as to its intended application. Thus, it is entirely possible that, when this Court ultimately reaches the merits of this case, Plaintiffs' arguments may prove to be moot. Accordingly, injunctive relief is improper considering the fluidity of the situation and the attenuated nature of Plaintiffs' First-Amendment and Due-Process claims.

21

**C.     Public interest favors that the legislative and regulatory processes be allowed to address the contested provision.**

The consequences of injunctive relief in this case would extend far beyond the facts of this case.  As discussed earlier, this is a public policy disagreement between the State of Michigan and its political subdivisions as to how best to spend limited public resources.  This lawsuit short-circuits the legislative process currently underway to address this disagreement, and deprives the State regulatory process the opportunity to define the scope of the application of § 57(3).  Accordingly, public interest weighs in favor of denying the injunctive relief and allowing the State of Michigan an opportunity to refine § 57(3).

## CONCLUSION AND RELIEF REQUESTED

For these forgoing reasons, Defendants respectfully request that this Court deny Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order and a Preliminary Injunction.

Respectfully submitted,

Bill Schuette
Attorney General

*s/Denise C. Barton*
Denise C. Barton (P41535)
Joseph Y. Ho (P77390)
Assistant Attorneys General
Attorneys for Defendants
P. O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  bartond@michigan.gov
(P41535)

Dated:  January 28, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2016 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Denise C. Barton*
Denise C. Barton (P41535)
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  bartond@michigan.gov
P41535

23