UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERNDIVISION

ROBERT TAYLOR, Mayor, City of Roseville;
DOUGLAS R. ALEXANDER, City Manager, City of
Algonac; MATTHEW BIERLEIN, County
Commissioner, Tuscola County; DONALD LYONS,
Mayor, City of Dowagiac; TODD R. ROBINSON,
Superintendent, New Haven Community Schools;
RUSSELL PICKELL, Superintendent, Riverview
Community Schools; GARY O'BRIEN, School Board
President, Riverview Community Schools; KELLY
COFFIN, Superintendent, Tecumseh Public Schools;
KIMBERLY AMSTUTZ-WILD, School Board
President, Tecumseh Public Schools; KEITH
WUNDERLICH, Superintendent, Waterford School
District; ROBERT SEETERLIN, School Board
President, Waterford School District; MICHELLE
IMBRUNONE, Superintendent, Goodrich Area
Schools; DAVID P. PRAY, Superintendent, Clinton
Community Schools; PATRICIA MURPHY
-ALDERMAN, Superintendent, Byron Area Schools;
AMY LAWRENCE, School Board President, Byron
Area Schools; ROBERT D. LIVERNOIS,
Superintendent, Warren Consolidated School District;
YVONNE CAAMAL CANUL, Superintendent,
Lansing School District, *in their individual and
official capacities*; and STEPHEN PURCHASE,
*in his individual capacity.*

No. 2:16-cv-10256

HON. JOHN CORBETT O'MEARA

MAG. R. STEVEN WHALEN

**MICHIGAN ASSOCIATION OF
SCHOOL BOARDS, MICHIGAN
ASSOCIATION OF SCHOOL
ADMINISTRATORS,
MICHIGAN ASSOCIATION OF
INTERMEDIATE SCHOOL
ADMINISTRATORS, AND
MICHIGAN LIBRARY
ASSOCIATION'S MOTION TO
FILE BRIEF AS *AMICUS
CURIAE***

Plaintiffs,

v.

RUTH JOHNSON, in her official capacity as
Secretary of the State of Michigan; and
the STATE OFMICHIGAN,

Defendants.

_____/

Scott R. Eldridge (P66452)
Michael J. Hodge (P25146)
Attorneys for Plaintiffs
One Michigan Avenue
Lansing, Michigan 48933

Jerome R. Watson (P27082)
Brian M. Schwartz (P69018)
Attorneys for Plaintiffs
150 West Jefferson, Ste. 2500
Detroit, Michigan 48226
313.963.6420

Denise C. Barton (P41535)
Joseph Y. Ho (P77390)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

_____/

## MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF ON BEHALF OF THE MICHIGAN ASSOCIATION OF SCHOOL BOARDS MICHIGAN ASSOCIATION OF SCHOOL ADMINISTRATORS MICHIGAN ASSOCIATION OF INTERMEDIATE SCHOOL ADMINISTRATORS AND MICHIGAN LIBRARY ASSOCIATION

The Michigan Association of School Boards (MASB), Michigan Association of School Administrators (MASA), Michigan Association of Intermediate School Administrators (MAISA), and Michigan Library Association (MLA) (collectively "*amici*") by and through their attorney, Joel Gerring, hereby move pursuant to Fed. R. Civ. P.7 and L.R. 7.1, to file a brief as *amicus curiae* in the above captioned case. As grounds for this motion, *amici* state as follows:

Page 2 of 5

1.   That MASB is a voluntary, nonprofit association of local and intermediate boards of education throughout the State of Michigan, whose membership consists of boards of education of over 600 local school boards and intermediate school boards in this state.  The activities of MASB include training programs and workshops for school leaders, informational support through publications and person-to-person contact, management consulting, policy analysis, legal services, and labor relations representation.  The mission of MASB is to provide quality educational leadership services for all Michigan boards of education, and to advocate for student achievement and public education.

2.   That MASA is a voluntary, nonprofit association of public school administrators.  MASA provides technical and personal services in addition to a wide array of print and electronic publications, government relations, and professional development opportunities targeted especially for Michigan's top-level school leaders.  MASA serves nearly 2000 members including professionals, retirees, and businesses, helping the leaders of Michigan's most important public institutions get better results for more than 1.5 million students.

3.   That MAISA is comprised of superintendents and administrators representing the 56 Intermediate School Districts (ISDs) in the State of Michigan.  ISD administrators provide and coordinate essential services to their constituent school districts to facilitate teaching and learning.  MAISA provides support and facilitates collaboration of the unique and evolving work of Michigan's ISDs and the communities they serve, and provides leadership development, collaborative structures, project management, and collective and customized support for the work of its members.

4.   The MLA is Michigan's oldest and largest library association spanning more than a century.  MLA's membership is comprised of nearly 1,200 individual and institutional members from public, academic, private and special libraries.  MLA advocates for libraries and the free access of information on behalf of the state's residents. On average, Michigan Libraries depend on locally dedicated millages for 78% of their funding.  Libraries are a vital resource for Michigan residents.  They provide access to unbiased, objective communication and dissemination of information.  The ability to educate and inform citizens about issues impacting their communities is one of a librarians' basic doctrines.

5.   That on January 26, 2016, Plaintiffs filed their complaint to challenge the constitutionality of 2015 P.A. 269 ("Act 269"), which amended the Michigan Campaign Finance Act and took effect on January 6, 2016.

6.   That Act 269 constitutes a gag order on public bodies and officials, including members of *amici*, by prohibiting the dissemination and communication of factual information on ballot proposals to their constituents 60 days before an election.

7.   That Act 269 will harm the members of *amici* by interfering with their ability and responsibility to educate their constituents about pending ballot proposals.

8.   That each of the *amici* has a strong interest in ensuring effective and informed participation in elections that involve important education and municipal-related ballot proposals.

9.   That *amici* have an obvious interest in the development of clear and rational law and recognizes their obligation to assist the courts in cases involving questions of major significance.

10. That each of the *amici* believes that their brief *amicus curiae* will assist this

Honorable Court in deciding the issue presented in the case at bar by addressing various aspects of the questions presented in addition to those that are addressed by the parties.

 11. That *amici* respectfully request to file an *amicus curiae* brief to call attention to the damaging impact that Act 269 will have on school districts and libraries in regard to their ability and responsibility to inform and educate their community members about ballot proposals. . For the foregoing reasons, *amici* respectfully request this Honorable Court to grant its Motion for Leave to File an Amicus Curiae Brief in this case.

     MICHIGAN ASSOCIATION OF SCHOOL BOARDS
     MICHIGAN ASSOCIATION OF SCHOOL ADMINISTRATORS
     MICHIGAN ASSOCIATION OF INTERMEDIATE SCHOOL
     ADMINISTRATORS
     MICHIGAN LIBRARY ASSOCIATION

     _____

     JOEL R. GERRING (P61969)
     Michigan Association of School Boards
     1001 Centennial Way, Suite 400
     Lansing, Michigan 48917

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2016, I filed the foregoing paper with the Clerk of the Court as well as via US Mail to all participants.

     _____

     JOEL R. GERRING (P61969)
     Michigan Association of School Boards
     1001 Centennial Way, Suite 400
     Lansing, Michigan 48917

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERNDIVISION

ROBERT TAYLOR, Mayor, City of Roseville;
DOUGLAS R. ALEXANDER, City Manager, City of
Algonac; MATTHEW BIERLEIN, County
Commissioner, Tuscola County; DONALD LYONS,
Mayor, City of Dowagiac; TODD R. ROBINSON,
Superintendent, New Haven Community Schools;
RUSSELL PICKELL, Superintendent, Riverview
Community Schools; GARY O'BRIEN, School Board
President, Riverview Community Schools; KELLY
COFFIN, Superintendent, Tecumseh Public Schools;
KIMBERLY AMSTUTZ-WILD, School Board
President, Tecumseh Public Schools; KEITH
WUNDERLICH, Superintendent, Waterford School
District; ROBERT SEETERLIN, School Board
President, Waterford School District; MICHELLE
IMBRUNONE, Superintendent, Goodrich Area
Schools; DAVID P. PRAY, Superintendent, Clinton
Community Schools; PATRICIA MURPHY
-ALDERMAN, Superintendent, Byron Area Schools;
AMY LAWRENCE, School Board President, Byron
Area Schools; ROBERT D. LIVERNOIS,
Superintendent, Warren Consolidated School District;
YVONNE CAAMAL CANUL, Superintendent,
Lansing School District, *in their individual and
official capacities*; and STEPHEN PURCHASE,
*in his individual capacity.*

No. 2:16-cv-10256

HON. JOHN CORBETT O'MEARA

MAG. R. STEVEN WHALEN

**MICHIGAN ASSOCIATION OF
SCHOOL BOARDS, MICHIGAN
ASSOCIATION OF SCHOOL
ADMINISTRATORS,
MICHIGAN ASSOCIATION OF
INTERMEDIATE SCHOOL
ADMINISTRATORS, AND
MICHIGAN LIBRARY
ASSOCIATION'S BRIEF
*AMICUS CURIAE* IN SUPPORT
OF PLAINTIFFS' EX-PARTE
MOTION FOR A TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

Plaintiffs,

v.

RUTH JOHNSON, in her official capacity as
Secretary of the State of Michigan; and
the STATE OFMICHIGAN,

Defendants.

_____/

Scott R. Eldridge (P66452)
Michael J. Hodge (P25146)
Attorneys for Plaintiffs
One Michigan Avenue
Lansing, Michigan 48933

Jerome R. Watson (P27082)
Brian M. Schwartz (P69018)
Attorneys for Plaintiffs
150 West Jefferson, Ste. 2500
Detroit, Michigan 48226
313.963.6420

Denise C. Barton (P41535)
Joseph Y. Ho (P77390)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.373.6434

_____/

**<u>MICHIGAN ASSOCIATION OF SCHOOL BOARDS</u>**
**<u>MICHIGAN ASSOCIATION OF SCHOOL ADMINISTRATORS</u>**
**<u>MICHIGAN ASSOCIATION OF INTERMEDIATE SCHOOL ADMINISTRATORS</u>**
**<u>AND MICHIGAN LIBRARY ASSOCIATION</u>**
**<u>AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFFS' *EX-PARTE* MOTION FOR</u>**
**<u>A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i
TABLE OF AUTHORITIES ......................................................................... ii
I.  STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE ................. 1
II.  INTRODUCTION ................................................................................. 3
III.  STATEMENT OF FACTS ...................................................................... 4
IV.  ARGUMENT ....................................................................................... 7
     A.  STANDARD FOR PRELIMINARY INJUNCTION ................................... 7
     B.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS
        OF THEIR CLAIMS ............................................................... 8
     C.  PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE
        HARM IF ACT 269 IS ENFORCED BY DEFENDANTS ...................... 8
     D.  THE BALANCE OF THE EQUITIES TIPS IN THE
        PLAINTIFFS' FAVOR ............................................................ 9
     E.  THE INJUNCTION IS IN THE PUBLIC INTEREST ......................... 10
CONCLUSION ......................................................................................... 11
CERTIFICATE OF SERVICE ...................................................................... 11

**TABLE OF AUTHORITIES**

*ACLU v. Bredesen*, 441 F.3d 370, 381 (6th Cir. 2006) ……………………………………….... 10
*City of Boston* v. *Anderson,* 439 U.S. 1389 (1970) …………………………………………..... 9
*Kidwell v. City of Union,* 462 F.3d 620 (6th Cir. 2006) …………………………………….. 8
*Mosier v Wayne County Board of Auditors,* 295 Mich 27, 294 NW 85 (1940) ………………… 4
*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, (2008) ………………………….... 7

# I. STATEMENT OF INDENTITY, INTEREST, AND AUTHORITY TO FILE

The Michigan Association of School Boards (MASB) is a voluntary, nonprofit association of local and intermediate boards of education throughout the State of Michigan, whose membership consists of boards of education of over 600 local school boards and intermediate school boards in this state. The activities of MASB include training programs and workshops for school leaders, informational support through publications and person-to-person contact, management consulting, policy analysis, legal services, and labor relations representation. The mission of MASB is to provide quality educational leadership services for all Michigan boards of education, and to advocate for student achievement and public education.

The Michigan Association of School Administrators (MASA) is a voluntary, nonprofit association of public school administrators. MASA provides technical and personal services in addition to a wide array of print and electronic publications, government relations, and professional development opportunities targeted especially for Michigan's top-level school leaders. MASA serves nearly 2000 members including professionals, retirees, and businesses, helping the leaders of Michigan's most important public institutions get better results for more than 1.5 million students.

The Michigan Association of Intermediate School Administrators (MAISA) is comprised of superintendents and administrators representing the 56 Intermediate School Districts (ISDs) in the State of Michigan. ISD administrators provide and coordinate essential services to their constituent school districts to facilitate teaching and learning. MAISA provides support and facilitates collaboration of the unique and evolving work of Michigan's ISDs and the communities they serve, and provides leadership development, collaborative structures, project management, and collective and customized support for the work of its members.

1

The Michigan Library Association (MLA) is Michigan's oldest and largest library association spanning more than a century.  MLA's membership is comprised of nearly 1,200 individual and institutional members from public, academic, private and special libraries.  MLA advocates for libraries and the free access of information on behalf of the state's residents. On average, Michigan Libraries depend on locally dedicated millages for 78% of their funding. Libraries are a vital resource for Michigan residents.  They provide access to unbiased, objective communication and dissemination of information.  The ability to educate and inform citizens about issues impacting their communities is one of a librarians' basic doctrines.

Each of the *amici* has a strong interest in ensuring informed participation in elections that involve important education and municipal-related ballot proposals. *Amici* also share a strong interest in the development of clear and rational law and recognize their obligations to assist the courts in cases involving questions of major significance.

All parties have consented to the filing of this brief.

## II. INTRODUCTION

In 1801, Thomas Jefferson wrote, "it is expected that [a government official] will not attempt to influence the votes of others nor take any part in the business of electioneering, that being deemed inconsistent with the spirit of the Constitution and his duties to it." 1 James D. Richardson, A Compilation of the Messages and Papers of the Presidents, 1789-1897, at 98-99 (1899).  The debate on the legality or constitutionality of government officials and entities engaging in electioneering still continues today, over 200 years since Jefferson commented on the issue.

*Amici* agree that public bodies should embrace neutrality in regard to elections. However, the cost of ensuring neutrality should not result in stifling the voice of school districts, libraries and other local units of government when there is a need to inform and educate voters on election issues.  As a result of P.A. 269 ("Act 269"), the members of *amici* are faced with overcoming an unprecedented gag order on sharing factual information on ballot proposals with their constituents.  Because Act 269 offends the democratic process by prohibiting the free flow of objectively neutral, core political speech, *amici* urge this Court to grant Plaintiffs' *Ex Parte Motion* for a Temporary Restraining Order and a Preliminary Injunction.

## III STATEMENT OF FACTS

The basic rule of law in Michigan is that public funds cannot be used to influence the outcome of an election. Thus, public funds cannot be used to support political campaigns, whether for a ballot issue or a candidate and regardless of political party affiliation. For example, in 1940 the Michigan Supreme Court ruled that county funds could not be used to advocate a position on a local ballot proposition, because "it was never contemplated under the Constitution and statutes of [Michigan] that our boards…should function as propaganda bureaus." *Mosier v Wayne County Board of Auditors,* 295 Mich 27, 294 NW 85 (1940).

Through the years, rulings by the Attorney General have reinforced this rule of law. A 1965 opinion concluded a school board had no authority to spend public funds to advocate a favorable vote at an election on the issuance of bonds. *See also* 1987 OAG 6423, 1988 OAG 6531, and 1993 OAG 6763. And, in contrast, a 1979 opinion indicated a school board possesses authority to use public funds to objectively educate voters on facts and issues related to a bond proposal involving the school district. 1979 OAG 5597.

The distinction between providing *objective information* to voters and *advocating a position* on a ballot issue is deeply imbedded in Michigan law. Amici and other local units of government only possess the powers expressly conferred upon them by the state constitution and by statutes or powers implied as necessary to the performance of expressly stated powers. Although school districts were given general powers in 1996 under the Revised School Code, general powers do not exist unless a school board can demonstrate compliance with specific criteria prescribed by law. *See* MCL 380.11a. As a result, school districts cannot spend school district funds for any purpose related to an election campaign, except when the expenditure is authorized by law.

4

Many states have also adopted laws codifying the prohibition of using public dollars to support or oppose a candidate or ballot proposal, including Michigan. Section 57(1) of Michigan's Campaign Finance Act reinforced the principle that public bodies lack statutory authority to expend funds to influence the electorate in regard to election questions by prohibiting a public body from using funds, personnel, or other public resources for the purpose of influencing the election of a candidate or the passage or defeat of a ballot proposal. MCL 169.257. This Section was added to the Campaign Finance Act in 1995 by Public Act 264, and it addressed the distinction between publicly supported electioneering and providing information to educate the local electorate on ballot issues. Key to the clarification was Subsection (1)(b) of Section 57, which specifically permitted a public body to create and publish factual information relevant to its official functions. MCL 169.257(1)(b). This provision has been interpreted to permit a public body, such as a school district, to produce and disseminate factual information that is relevant to the functioning of the public body "as long as the information is limited to the facts and does not include express advocacy." *Interpretative Statement to David Murley* (Oct. 31, 2005). And, the Department of State has acknowledged that this exception "recognize(s) the societal benefit of inviting public discussion of issues confronting government agencies and public officials, thus enabling voters to make informed decisions based on an official's expression of views or factual information concerning government operations." *Interpretative Statement to Lee Bourgoin* (Oct. 24, 2014).

The members of *amici* have utilized the factual information exception found in Section 57 from the onset of 1995 PA 264. Countless local bond and millage proposals have been passed by informed and educated voters who had access to factual and unbiased information produced by their local school district or library. If a ballot proposal includes a "Sinking Fund Millage" or

"Non-Homestead Millage Renewal", a local school district is often in the best position to explain the reason for the proposal and the consequences if it passes or fails. Many school districts consider this to be an essential public service offered to the community, if not an obligation.

Now, the rules have changed under Act 269. This amendment to Section 57 includes the following restriction:

> [A] public body, or a person acting for a public body, shall not, during the period 60 days before an election in which a local ballot question appears on a ballot, use public funds or resources for a communication by means of radio, television, mass mailing, or prerecorded telephone message if that communication references a local ballot question and is targeted to the relevant electorate where the local ballot question appears on the ballot.

MCL 169.257(3).

Additionally, the Legislature made it clear that a public body's authority to produce and disseminate factual information on a ballot proposal is now subject to Act 269's gag order. MCL 169.257(b). Thus, a school district or library must now cease its public service of providing factual information on a ballot question without limitations two months prior to the election, the time when most citizens begin to research their election choices.

6

## IV ARGUMENT

### A.  STANDARD FOR PRELIMINARY INJUNCTION

A plaintiff seeking a preliminary injunction must establish the following:

> (1) the likelihood of succeeding on the merits,
>
> (2) the likelihood of suffering irreparable harm in the absence of preliminary relief,
>
> (3) the balance of the equities tips in the plaintiff's favor, and
>
> (4) the injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, (2008).

As discussed in greater detail below, each of these factors weighs in Plaintiffs' favor.  If the Defendants are not enjoined from enforcing Act 269, the Plaintiffs will suffer irreparable harm in their official capacities as mayors, city managers, county commissioner, school superintendents, and school board presidents.  These individuals were blind-sided by the gag order of Act 269 during the final months of preparing for the March 8, 2016 election date.  Plans were already in place to produce information in the months of January and February leading up to the election.  Now, for these individuals, the rules have been changed in the middle of the game, making it close to impossible to carry out the information plans that were established months before the Governor signed Act 269.  Thus, a failed bond or millage proposal will be the likely result of Act 269, destroying the election communication plans of the Plaintiffs.  Needless to say, the defeated bond and millage proposals will have far-reaching consequences for the Plaintiffs' cities, counties and school districts.  The public has no interest in having a gag order stifle the free flow of objectively neutral, core political speech.

7

**B.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

As stated by Plaintiffs in their complaint, "Act 269 is an unprecedented gag order on public bodies and public officials [that] violates the First Amendment of the United States Constitution, guaranteeing free speech, because it prohibits the free flow of objectively neutral, core political speech."

The majority opinion in *Kidwell v. City of Union* offers an example of the constitutional protection given to public officials when communicating about ballot proposals. *Kidwell v. City of Union,* 462 F.3d 620 (6th Cir. 2006).   In this case, the Court recognized that "a limit on government speech during elections would allow hecklers to silence the government on issues in which it has interest and expertise – and on which citizens have an interest in hearing their government's perspective." *Id.* at 626   Thus, the Court concluded its opinion by emphasizing that "[t]he needs of effective governance command that the bar limiting government speech be high." *Id.*

In regard to Act 269, the Michigan Legislature went well below the bar set by the Sixth Circuit Court of Appeals for limiting government speech.  For this reason, an injunction should be issued prohibiting Defendants from enforcing the unconstitutional gag order of Act 269.

**C.     PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM IF ACT 269 IS ENFORCED BY THE DEFENDANTS**

If Act 269 is enforced, local public entities across the state, including Plaintiffs, will suffer irreparable harm.  Numerous ballot and millage proposals that have been planned for years will likely fail as a result of Act 269's gag order.  Millage proposals for improving emergency medical services and offering local youth programs will be at risk.  School district funding and building projects will also be jeopardized.  Additionally, any public entity that has a ballot

8

proposal voted down on March 8, 2016, will incur the additional expense of placing the issue on a ballot at a subsequent election.   The harm that will be caused will be far-reaching and irreparable.

### D.      THE BALANCE OF THE EQUITIES TIPS IN THE PLAINTIFFS' FAVOR

The U.S. Supreme Court has continually embraced the value of government speech.  In *City of Boston* v. *Anderson,* 439 U.S. 1389 (1970), the Court determined that "the balance of the equities" justified staying a state court's order that had enjoined the City of Boston from spending public funds to urge support of a ballot referendum on residential and commercial property taxes.  In the opinion, Justice Brennan emphasized the value of the government's voice in informing the votes on contested ballot measures – especially in countering powerful private speech:

> [C]orporate industrial and commercial opponents of the referendum are free to finance their opposition.  On the other hand, unless the stay is granted, the city is forever denied any opportunity to finance communication to the statewide electorate of its views in support of the referendum as required in the interests of all taxpayers, including residential property owners.

*Id.* 1390.

Justice Brennan would surely recognize that Act 269 creates an easy playbook for opponents of local governmental entities who wish to defeat a ballot proposal.  A group could simply "wait in the weeds" until the final two months before the election, and then saturate a community with misleading or inaccurate communications about a pending proposal.  Under Act 269, a governmental entity would essentially be defenseless to such attacks, without the authority to communicate neutral and factual information to the voters.

9

Further, if an injunction is issued, the Defendants may still rely on Section 57 of the Campaign Finance Act to ensure that local governmental entities remain neutral on elections, and only produce or disseminate factual information concerning a ballot issue. Ostensibly, Act 269 was passed because, allegedly, certain local government entities were disseminating what some considered to be unbiased information regarding specific ballot proposals and other initiatives. The reality, however, is that Section 57 already exists to deal with such situations, demanding that information concerning ballot issues remain factual and content neutral. Act 269 is, therefore, less about ensuring that tax payer money is not used to disseminate biased information by a governmental entity (Section 57 already covers this issue) and more about keeping voters uninformed that a vote is occurring at all. It is well understood that low voter turnout numbers generally favor the opposition in any local ballot initiative which seeks to raise public funds. Thus, the harm to Plaintiffs if an injunction is not granted far outweighs the harm to Defendants if an injunction is issued.

## E.     THE INJUNCTION IS IN THE PUBLIC INTEREST

The public interest is in having Defendants comply with the First Amendment to the United States Constitution. "[I]t can be argued that government must be permitted to speak or it will cease to be effective as a government. *ACLU v. Bredesen*, 441 F.3d 370, 381 (6th Cir. 2006) (Martin, J., concurring in part and dissenting in part) ("[T]he government may generally speak and control its own message.").

The public has no interest in allowing Defendants to impose a gag order on local governmental entities, thus denying public officials of the opportunity to perform a public service of educating voters on upcoming ballot proposals.

10

Therefore, issuance of an injunction will not harm, but rather will protect the public interest.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' *Ex Parte Motion* for a Temporary Restraining Order and a Preliminary Injunction and protect the ability of public officials serving school districts, libraries and other government entities to engage in valuable government speech.

Respectfully submitted,

MICHIGAN ASSOCIATION OF SCHOOL BOARDS
MICHIGAN ASSOCIATION OF SCHOOL ADMINISTRATORS
MICHIGAN ASSOCIATION OF INTERMEDIATE SCHOOL
ADMINISTRATORS
MICHIGAN LIBRARY ASSOCIATION

JOEL R. GERRING (P61969)
Michigan Association of School Boards
1001 Centennial Way, Suite 400
Lansing, Michigan 48917

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2016, I filed the foregoing paper with the Clerk of the Court as well as via US Mail to all participants.

JOEL R. GERRING (P61969)
Michigan Association of School Boards
1001 Centennial Way, Suite 400
Lansing, Michigan 48917

11