UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TAYLOR, Mayor,
City of Roseville, *et al.*,

    Plaintiffs,

Case No. 16-10256

v.

Hon. John Corbett O'Meara

RUTH JOHNSON, in her official capacity
as Secretary of State of the State of
Michigan; and the STATE OF MICHIGAN,

    Defendants.
_____/

### OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

    Before the court is Plaintiffs' motion for preliminary injunction. The court heard oral argument on February 4, 2016, and took the matter under advisement. For the reasons explained below, Plaintiffs' motion is granted.

### BACKGROUND FACTS

    Plaintiffs are public officials (mayors, county commissioners, superintendents of schools) and an individual, Stephen Purchase. They are challenging the constitutionality of a newly enacted amendment to Michigan's campaign finance law. For years, the Michigan Campaign Finance Act has prohibited the use of public funds and resources to engage in express advocacy.

M.C.L. 169.257(1).  This prohibition did not apply to "the production or dissemination of factual information concerning issues relevant to the function of the public body." M.C.L. 169.257(1)(b).

This subsection, M.C.L. 169.257(1)(b), was amended to be "[s]ubject to subsection (3)," a new provision that provides:

> Except for an election official in the performance of his or her duties under the Michigan election law, 1954 PA 116, MCL 168.1 to 168.992, a public body, or a person acting for a public body, shall not, during the period 60 days before an election in which a local ballot question appears on a ballot, use public funds or resources for a communication by means of radio, television, mass mailing, or prerecorded telephone message if that communication references a local ballot question and is targeted to the relevant electorate where the local ballot question appears on the ballot.

M.C.L. 169.257(3).  Plaintiffs note that there was no substantive debate about this provision and that some lawmakers later admitted that they did not realize that this provision, a last-minute addition, was part of the bill.  The amendment was signed by Governor Snyder on January 6, 2016, with immediate effect.

At the same time, Governor Snyder issued a signing letter "[b]ecause of the substantial public debate surrounding the bill's passage." Pls.' Ex. 11.  The governor called upon the Legislature to clarify §57 of the Act.  He stated that the "new language in subsection (3) only applies when local governmental entities use

-2-

taxpayer resources to distribute mass communications concerning ballot questions. As I interpret this language, it is intended to prohibit communications that are plain attempts to influence voters without using words like 'vote for' or 'support.'" Id.

The governor suggested that the Legislature enact new legislation to address the concerns of the public and "clarify that the new language does not impact the expression of personal views by a public official, the use of resources or facilities in the ordinary course of business, and that it is intended only to prohibit the use of targeted, advertisement style mass communications that are reasonably interpreted as an attempt to influence the electorate using taxpayer dollars." Id.

Plaintiffs contend that they have historically used public resources to disseminate (via mass mailings, etc.) objectively neutral, factual information about local ballot questions during the 60-day period leading up to an election. Plaintiffs allege that they intended to communicate with their constituents regarding local ballot proposals on the March 8 and May 3, 2016 ballots. For example, Plaintiff Douglas Alexander, City Manager for the City of Algonac, was planning to communicate factual, neutral information regarding a ballot proposal in the city's quarterly newsletter. On March 8, 2016, Algonac residents are being asked to vote on a ballot proposal to enter into a twenty-year lease with the U.S. Coast Guard for 200 feet of Riverfront Park dockage in exchange for the Coast Guard repairing the

seawall at that location.

As another example, Todd R. Robinson, superintendent of New Haven Community Schools, has prepared informational flyers regarding bond proposals that will be on the ballot March 8. Robinson has not disseminated those flyers by mass mailing, as he had planned. Plaintiff Stephen Purchase is a citizen who alleges that he "would normally rely on public officials to educate him about the details of the bond proposal, including its pros and cons, by way of mass mailing, radio, television, and pre-recorded telephone messages during the 60 days before the election." Compl. at ¶ 85.

## LAW AND ANALYSIS

Plaintiffs filed their complaint and motion for a preliminary injunction on January 26, 2016, alleging that M.C.L. 169.257(3) violates their First and Fourteenth Amendment rights to free speech and their Fifth and Fourteenth Amendment rights to due process. Plaintiffs seek a declaration that the statute is unconstitutional on its face and as applied as well as an injunction prohibiting its enforcement.

### I. Preliminary Injunction Standard

In determining whether to grant a preliminary injunction, the court balances four factors: (1) whether the movant has a strong likelihood of success on the

merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." American Civil Liberties Union Fund of Michigan v. Livingston Cty., 796 F.3d 636, 642 (6th Cir. 2015).  The Sixth Circuit has noted that in cases alleging constitutional violations, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.  This is because the public's interest and any potential harm to the parties or others largely depend on the constitutionality of the state action." Id. (citations omitted).   See also Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002) ("[A] plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights.").

**II.     Standing**

As a threshold matter, Defendants contend that Plaintiffs lack standing to challenge §57(3) because they have not established injury-in-fact.  To the contrary, the public official Plaintiffs have articulated in their complaint the types of communications that they intended to produce and that they have refrained from disseminating these communications because they fear that they will run afoul of §57(3). Plaintiffs satisfy the injury-in-fact requirement because they allege "an

intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution." Susan B. Anthony List v. Driehaus, 134 S.Ct. 2334, 2342 (2014). Plaintiffs need not expose themselves to prosecution by engaging in arguably prohibited activity before challenging §57(3). Id. The requirements of Article III standing are satisfied here.

### III. Due Process

As to the merits, Plaintiffs argue that § 57(3) is unconstitutionally vague, in violation of the Due Process Clause of the Fifth Amendment. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. It requires the invalidation of laws that are impermissibly vague." F.C.C. v. Fox Television Stations, Inc., 132 S. Ct. 2307, 2317 (2012) (citation omitted).

> Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech.

Id. (citation omitted). See also Grayned v. City of Rockford, 408 U.S. 104, 108-09

(1972).

Because the consequences for violating § 57(3) include criminal sanctions, a "relatively strict" level of scrutiny is appropriate. Belle Maer Harbor v. Charter Twp. of Harrison, 170 F.3d 553, 557 (6th Cir. 1999)  "An enactment imposing criminal sanctions or reaching a substantial amount of constitutionally protected conduct may withstand facial constitutional scrutiny only if it incorporates a high level of definiteness." Id.

The Sixth Circuit has explained that to "withstand a facial challenge, an enactment must define the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary enforcement of the provision." Id.

Plaintiffs argue that §57(3) is vague because public employees are uncertain about what conduct is and is not permitted.  The statute prohibits a "person acting for a public body" from using "public funds or resources for a communication by means of radio, television, mass mailing, or prerecorded telephone message if that communication *references* a local ballot question." Id. (emphasis added).  In his signing letter, Governor Snyder stated that "[a]s I interpret this language, it is intended to prohibit communications that are *plain attempts to influence voters without using words like 'vote for' or 'support.'*" Pls.' Ex. 11 (emphasis added).

The State also urges the court to interpret this provision consistent with "the purpose of the statute as a whole." State Br. at 16. The State contends that "a person of normal intelligence would be able to identify the kinds of [prohibited] communication that would be made for the '*passage or defeat*' of a ballot question." Id. (emphasis added).

Perhaps the confusion articulated by Plaintiffs stems from the fact that § 57(3)'s broad language appears inconsistent with the stated purpose of prohibiting "electioneering" conduct with taxpayer funds. One could arguably find a communication that "references" a ballot question to be any communication that merely "mentions" a ballot question. This result appears absurd; it is difficult to imagine that regulators would attempt to sanction or prosecute a public official for merely mentioning a ballot question in a city newsletter, explaining the difference between a millage renewal and millage increase, or explaining what "non-homestead" means, for example. See Compl. at ¶¶ 68, 72. The vague language of §57(3) arguably prohibits these communications, however, leaving it up to regulators to determine what violates the act. Allowing regulators this type of unrestricted judgment call provides no check against arbitrary or discriminatory enforcement and is what the vagueness doctrine is meant to avoid. See Grayned, 408 U.S. at 108 ("A vague law impermissibly delegates basic policy matters to

-8-

policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.").

Public officials deserve clarity on this issue so that they may serve the public in the normal course without fear of arbitrary sanction or prosecution. Underscoring the vague nature of §57(3) are several bills pending in the Legislature either repealing or clarifying it.  See Michigan HB 5219; Michigan SB 702; Michigan SB 721.  This matter is best resolved through the legislative process, with due deliberation and debate.  Given the fast approaching March 8, 2016 elections, however, time is of the essence and the court must act.

The court finds that Plaintiffs have demonstrated a strong likelihood of success on the merits of their claim that §57(3) is unconstitutionally vague and thus void.[1]  As a result, the other preliminary injunction factors also weigh in Plaintiff's favor.  The infringement of constitutional rights inherently causes irreparable injury.  The balance of harms favors Plaintiffs, as neither the State nor third parties would be harmed if the State is enjoined from enforcing §57(3).  The provision of the statute that prohibits the use of public funds to *advocate* for ballot measures remains in effect.  The public interest, which favors the upholding of constitutional

---

[1] Therefore, it is not necessary for the court to consider Plaintiffs' First Amendment claim at this time.

rights, also favors an injunction.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for preliminary injunction is GRANTED and that Defendants are hereby ENJOINED from enforcing § 57(3) of the Michigan Campaign Finance Act, M.C.L. 169.257(3), until further order of the court.

          s/John Corbett O'Meara  
          United States District Judge

Date: February 5, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, February 5, 2016, using the ECF system.

          s/William Barkholz  
          Case Manager